Van Vorst, J.
This action is brought by the plaintiffs, stockholders of the Atlantic National Bank of New York, in their own behalf and of all other stockholders, against the directors of the bank. The bank was organized under the. act of Congress known as the National Bank Act. In 1878 the bank became insolvent and suspended payment. The comptroller of the currency interposed, and a receiver was by him appointed, who entered upon the discharge of his duties as such, and the bank has ceased to exercise any corporate powers.
The liabilities of the bank far exceeded its assets. The comptroller of the currency, to pay the liabilities, has called upon and collected from the stockholders severally, an amount equal to their stock at the par *281 value thereof. The plaintiffs have paid the sums assessed against them as stockholders. The defendant Taintor was the cashier of the bank, and its insolvency was occasioned by his defalcations, and willful misconduct in appropriating to his own use the funds and assets of the bank. The losses of the bank were owing to this misconduct of its cashier.
These defalcations and misappropriations of the funds of the bank by its cashier were caused by, as the complaint alleges, and were directly attributable to, the negligence and misconduct of the directors. The acts and omissions constituting the negligence and misconduct of the directors are alleged in the complaint.*
*282 The action is brought to recover from the defendants, the directors, the losses resulting to the plaintiff through their negligence and misconduct.
*283 As the plaintiff’s losses have been sustained through the wasting and misapplication of the funds of the bank, they might doubtless be repaired by *284 the recovery to the use of the bank of the amount of the wasted assets. And such action, it has been repeatedly decided, must be brought in the name of the *285 bank, or, if a receiver has been appointed, in Ms name (Greavs v. Gouge, 16 Abb. Pr. N. S. 377; affirmed 52 How. Pr. 58, which was affirmed 69 N. Y. 154; Allen v. *286 N. J. Southern R. R. Co., 49 How. Pr. 14; Ducket v. Gores, 6 Ch. Div. 82; S. C., 22 Eng. R. note on page 655, where cases on thissubject are collected; Carpenter v. Roberts, 56 How. Pr. 216).
But if the bank, or its receiver, should refuse to bring the action, then the same may be prosecuted by the stockholders, and the bank or its receiver be made a party defendant.
In this case the bank is practically powerless to act, and it has passed into the hands of a receiver to wind up its affairs. And as to the receiver, the complaint alleges that the comptroller of the currency has refused Ms sanction to the institution of this suit.
To hold, under such circumstances, that the stock *287 holders are remediless, would be a hardship which this court could not sanction.
The bank and its receiver are made parties to this action, and no practical difficulty exists in the way of administering relief, legal or equitable, as the facts appearing on the trial will justify. The refusal of the comptroller of the currency and of the receiver to act justifies an action by the stockholders.
And all the stockholders being brought into this action, or being at liberty to come in, redress may be had in one action, in a way to protect every conceivable right or interest. Whether a recovery shall be had directly in favor of each stockholder, for the amount of his loss of damage, or whether the moneys to be recovered shall pass to the receiver and be administered by him, or otherwise, are questions which it is not important now to pass upon. The judgment upon the facts will determine that in accord with law and equity. That an action of this character could be maintained by the stockholders was decided directly by Mr. Justice Babrett, in the case of Hand against the same di< rectors. The result reached by him is entirely satisfactory to me. The objection interposed under the present demurrer—that the plaintiffs have not legal capacity to sue—was disposed of in effect by the decision of Justice Barrett, and is included in what has been above said.*
*288 It is, however, urged that this court has not jurisdiction of the subject of this action.
This action is in effect to recover the individual losses sustained by the plaintiffs through the negligence and misconduct of the directors of the bank. That the bank was a national institution in itself affords no adequate reason why a State court should not try such question and administer relief.
It is probable that the comptroller could have brought or authorized an action in the Federal courts to recover the wasted assets, and through such recovery, if successful, the plaintiffs might in the end be made whole ; but as he will not take such step, the plaintiffs should be at liberty to proceed, and that in a State court.
*289 It is not clear to me that the federal courts would have jurisdiction of this action brought by the plaintiffs to recover for the loss and damages sustained through the negligence and misconduct of the defendants. But I have no idea that the jurisdiction of tho federal courts would be exclusive. The fact that the suit relates to the affairs of a national bank does not deprive the State courts of jurisdiction (Bank of Bethel v. Pahquogue Bank, 14 Wall. 383; Cooke v. State Bank, 52 N. Y. 96 ; Brinckerhoff v. Bostwick, 23 Hun, 237).
There should be judgment for the plaintiffs on the demurrer, with liberty to the defendants to answer on payment of costs.

 The allegations of the complaint were as follows:
The plaintiffs, complaining on behalf of themselves and all others, the stockholders of the Atlantic National Bank of New York, who shall, in due time, come in and seek relief by and contribute to the expenses of this action, by Nash & Holt, their attorneys, allege upon information and belief:—
That the defendant, the Atlantic National Bank, is a corporation and banking association organized on or about the month of June, 1865, under and by virtue of the act of Congress of the United States, approved June 3, 1864, and known as the National Bank Act, and the various acts amending and extending the same, and that from the period of said organization until on or about April 26, 1873, the said Atlantic National Bank of New York transacted a large general banking business at the city of New York: that on or about said April 26, 1873, said banking association was insolvent and suspended payment, and refused to pay upon demand certain of its circulating notes, and that thereupon, on or about April 28, 1873, the comptroller of the currency duly appointed Charles E. Strong, receiver of the said banking association, and that the said Charles E. Strong thereupon duly accepted such appointment, and qualified as such receiver, and entered upon and has since been engaged in the discharge of the duties of such receivership, and that since said appointment of such receiver said banking association has not transacted any business or exercised any corporate powers.
That the capital stock of said bank was $300,000, divided into 4000 shares of the par value of $75 each. That the plaintiffs at the time of the said insolvency and suspension of said bank were, and still *282 are the owners and holders of certain shares of its capital stock in the amounts set after their respective names, as follows:

[Names and number of shares.]

That at the time of the said suspension of payment by the said bank, the said bank was and has since been insolvent, and that-its liabilities so far exceeded its assets as to entirely absorb its capital stock, and that the property and assets of said banking association were entirely insufficient to pay and satisfy its debts and liabilities over and above its liabilities to shareholders upon account of capital stock, and that the comptroller of the currency having so ascertained and determined and having decided that it was necessary, in order to pay the same, to enforce the individual liabilities of the shareholders of said banking association, as provided by the said acts of Congress and particularly by the 12th section of said, act of June 3, 1864, duly ordered and made an assessment upon all the shareholders of said bank, including the plaintiffs, to the full extent of the whole amount of their stock therein, at the par value thereof, in addition to the amounts invested in such shares. That by reason of the liabilities of said bank, and the said assessment made necessary thereby as aforesaid, the shareholders of said bank, including the plaintiffs, have been obliged to pay, and have actually paid to the said receiver the full amount of said assessments.
That the defendant, T., from about the year 1866 until the said suspension of payments by said bank on April 26, 1873, was the cashier of said bank, and that the insolvency- of said bank was caused by the defalcations and willful misconduct of said defendant T. while acting as such cashier, from about the year 1869 to the suspension of said bank. That at times during that period said defendant T. was engaged in speculative purchases and sales of stock upon margins to very large amounts. That in the course of such speculations said defendant T., from time to time, in violation of his duty as such cashier, wrongfully appropriated to his own use and paid over to brokers for margins, or otherwise employed in such speculations, large amounts of the funds, assets, and securities belonging to said bank- or held in the custody and control of said bank, to an amount in the aggregate exceeding §425,000, and that all of the substantial losses of said bank were due to the said misconduct of said cashier.
That at the time of the said suspension of said bank in 1878, R. S. B., since deceased [herefollowed other names] were directors of said *283 bank and constituted the board of directors thereof, each of said directors having been theretofore duly elected a director, and having accepted said office and trust, and having acted therein. That, as plaintiffs are informed and believe, the said J. E. S. died insolvent, and that said D. M. W. was in his lifetime a citizen of New Jersey, and that Iris personal representative, who is now ad ministering his estate, is a citizen of New Jersey, and is beyond the jurisdiction of this court. That the defendant A. was also a director of said banking association during a certain period and until about a year before the said suspension of said bank, and that the following isa statement of the respective periods of service of said B. S. B. and the defendants hereinafter named as directors of said bank, those holding office more than one year having been annually re-elected during their period of service:
R. S. B., from June 27, 1865, till suspension of bank [and so on].
That on or about March 30, 1879, said R. S. B. died, leaving a last will and testament; that on or about April 7, 1879, the said will was duly admitted to probate, and letters testamentary thereon duly issued to the defendants L. C. B., A. S., W. R. B., and A. S. W., as executors thereof, by the surrogate of Orleans county, to whom jurisdiction in that behalf belonged, and that said defendants thereupon accepted such appointment, and have since acted as such executors.
That the said defalcations and the misappropriation of the funds of said bank by its said cashier were caused by, and were directly attributable to, and were the consecpience and result of the negligence and misconduct of said directors, including the defendants, in the discharge of the duties of their said office, as hereinafter particularly stated. That about the month of November, 1869, the defendant T., then being cashier as aforesaid, became largely engaged in stock speculations, and wrongfully employed and lost in such speculations funds of said bank to a large amount; that said board of directors thereupon became fully informed that said cashier had been so engaged and had so employed the funds of said bank; that at a special meeting of said board of directors held on or about November 17, 1869, at which the said B., S. and W. and the defendants R. and A. were present, after a full explanation of said employment by said cashier of the funds of said bank in said speculations, a settlement was agreed upon, whereby the father of said cashier was to give his note for the payment of §5,000, and the said cashier his individual note on demand with interest, for §15,000, the balance of the sum for which said cashier was *284 indebted to said bank; that ..thereupon pursuant to the terms of settlement said notes were given, and it was resolved that $15,000 of the loans then standing on the books of said bank in the name of T., being the amount remaining unsecured as aforesaid, should be charged to profit and loss, and that fictitious entries should be made upon the books of said bank to the amount of $15,000, as an offset to such charge; that such fictitious entries were thereupon made upon the books of said bank, and that said directors at said meeting intentionally omitted to have any record of said meeting made upon the book of minutes of the meetings of the board of directors of said bank; and plaintiffs allege, upon information and belief, that the defendants, other than those present at said meeting, thereafter and long before the failure of skid bank hereinafter mentioned, learned and had full knowledge of all the material facts connected with the employment of said money by said T. in stock speculations, and the settlement thereafter had with said T. in connection therewith; that said board of directors thereupon concealed the fact that said cashier had been engaged in said speculations, and that the bank had suffered such losses, and continued said T. in office as such cashier, knowing him to be untrustworthy, and without taking any precautions to prevent said cashier from again engaging in stock speculations, and again willfully employing the funds of said bank therefor.
That during almost all the period from said transaction in November, 1869, until the suspension of the bank in April, 1873, the defendant T. was engaged in stock speculations at times to very large amounts; that during said period the directors of said bank failed and neglected to exercise any proper or efficient control or supervision, over the said cashier, although knowing that he had speculated in stocks and was a person without means; that the substantial direction and management of said bank was left to said cashier; that there was no finance or executive committees of the board of directors; that meetings of board of directors at which a quorum were present were infrequent; that no effective system of examination was provided calculated to detect defalcation or misconduct by the officers of the bank; that a majority of said board opposed all attempts to establish any effective system of examination; that or about January 25, 1872, at a regular meeting of the board of directors of said bank, at which four of said directors, said S. and B., and the defendants R. and S. were present, being less than a quorum of said board, various resolutions *285 were proposed and adopted, including a resolution that any three directors of said bank might at any time examine any and all the securities and assets of said bank.
That thereafter, on or about February, 13 1873, at a regular meeting of said board of directors, at which were present said S., and the defendants B., S., S. and B.s being a quorum of said board, it was among other tilings moved that the minutes of the meeting on January 35, 1873, being a meeting at which a quorum were not present as aforesaid, be approved; that said motion was not carried; that thereupon said resolution that any three directors of said bank might at any time examine any and all the securities and assets of said bank, previously adopted at said meeting of January 85, 1873, as aforesaid, was again proposed, and was not adopted, and that thereupon and in lieu' of said resolution, a resolution was adopted to the effect that whenever thereafter any three directors should request the president in writing to call a meeting of the board for the purpose of examining the affairs of said bank, it should be the duty of the president to call such meeting within three days after receiving such request in writing, to the end that such examination might be had by the authority of the board; that the proceedings at said meetings were duly entered upon the minutes of said board, and that all the directors knew of said proceedings, or might have known of the same, and were changeable with knowledge thereof.
That the accounts of said defendant T. on the books of said bank, either as cashier or as an individual depositor, if inspected, would have led persons of ordinary prudence to suspect that he was engaged in stock speculations to an immense extent, and plaintiffs allege that the directors knew or bad reason to suspect that the defendant T. was speculating in stocks and employing the funds of the said bank therefor, or negligently violated their duty as directors to the shareholders of the bank, including the plaintiffs, by willfully retaining the defendant T. in his position as cashier, knowing him to be an untrustworthy officer, and by omitting to exercise any proper or customary supervision or restraint over said cashier as aforesaid.
That, by reason of the premises, the said directors were guilty of negligence and misconduct in their office as directors of said bank, whereby the plaintiffs have suffered damage to a large amount.
That after the appointment of said Charles E. Strong as such receiver, and before this action, application was duly made in behalf of *286 plaintiffs to said receiver and to the comptroller of the currency, to have said receiver begin this action in behalf of the shareholders of said bank, but that said comptroller refused to authorize said receiver to bring such suit.
That the shareholders of said bank are very numerous, to wit; more than one hundred in number, and that some of them are unknown to plaintiffs, and cannot be ascertained by them; that it is impracticable to bring them all before the court, and that plaintiffs sue for the benefit of all of shareholders who may choose to join in this suit.
Wherefore plaintiffs pray that this court decree that the defendants who were directors as aforesaid are individually, and that the defendants who are executors of the will of R. S. B. are, as such.cxecutors, responsible to the plaintiffs for all losses resulting to the plaintiffs as such shareholders from the directors’ negligence and misconduct in office as aforesaid; and that an account be taken of the damages suffered by the respective plaintiffs and by any other shareholders of said banking association, who may in due time join in this suit, by reason of the said negligence and misconduct in office, and that the several plaintiffs have judgment against the defendants who were directors as aforesaid, and against the said executors as such, for the respective amounts in which, upon said accounting, they shall appear to have respectively suffered damage in the respects aforesaid; and that such other relief in the premises, as may just be, granted, with the costs and disbursements of this action.
Nash & Holt,
Plaintiffs’ Attorneys.

 In Hand v. Atlantic National Bank, another stockholder had sued by the same attorneys, on a similar complaint, but without joining the receiver. The bank demurred, assigning, among other grounds, a defect of parties in omission of the comptroller of the currency and the receiver, the joinder of a demand vested in the receiver, with a demand for damages to the individual plaintiff, and that the facts did not state a cause of action.
Barrett, J., held, at Special Term, 1877, that the complaint was sustained by Robinson v. Smith, 3 Paige, 229, except, perhaps, as to the damages by the assessment; and that the necessity of joining the *288 receiver could not avail the bank, for it had no interest in the joinder. The opinion was as follows:
Barrett, J.—The complaint, in its general features, is good upon the authority of Robinson v. Smith (3 Paige, 222). But one cause of action is stated,—in substance, the gross negligence of the trustees, resulting in the waste and loss of the corporate assets. The assessment upon the stockholders is not averred as a direct cause of action, but as a special element of damage. Possibly it may not be cognizable as such in an equity suit of this nature; but this is a question for the hearing. Ordinarily the corporation should file the bill, but the stockholders may do so where, as here, the corporation is still under the control of -the accused trustees. In the latter case, the corporation is necessarily a party defendant.
But, in our judgment, the receiver should also have been joined, and the court will see that he is brought in before final judgment. The trustees are entitled to have all possible claims against them settled in the one suit; and the presence of the receiver is necessary to a complete determination of the controversy.
The defendant corporation, however, cannot demur upon that ground, for the reason that it has no interest in the joinder (Hillman v. Hillman, 14 How. Pr. 456; Newbould v. Warrin, 14 Abb. Pr. 80).
There must, therefore, be judgment overruling the demurrer, with costs, but with leave to withdraw the demurrer and answer over within twenty days upon payment of such costs.
For another decision as to costs, see 15 Hun, 481.