(93 Misc. Rep. 344)

### PLANTEN v. NATIONAL NASSAU BANK OF NEW YORK et al.

(Supreme Court, Special Term, New York County. January, 1916.)

1. PLEADING ☞214—DEMURRER—MATTERS ADMITTED.

In an action by a stockholder of a national bank against its directors for damages for alleged waste of assets by mismanagement, where the allegation of an affirmative defense that a liquidating committee superseded the directors as the controlling authority of the bank was expressly to depend upon the effect of a stockholders' resolution, demurrer to the answer admitted only the adoption of the resolution, and not the results which defendant alleged flowed from the appointment of the committee.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 525–534; Dec. Dig. ☞214.]

2. BANKS AND BANKING ☞281—NATIONAL BANKS—APPOINTMENT OF LIQUIDATING COMMITTEE—EFFECT—STATUTE.

Where shareholders of a national bank appointed a committee to liquidate its affairs, pursuant to Rev. St. § 5220 (U. S. Comp. St. 1913, § 9806), the control of the bank by the directors, and their power to determine what actions should be brought by the bank, was not thereby terminated, so as to render necessary demand upon the committee, rather than the directors, by a stockholder as a continued precedent to his right

to sue the directors for waste of assets, since the law places the control of a national bank in the hands of its directors, where it resides until taken away by some other provision of the law, as by the appointment of a receiver.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1075–1079; Dec. Dig. ☞281.]

3. CORPORATIONS ☞559—RECEIVERSHIP—EFFECT.

A receiver for a corporation, once appointed, displaces the directors in the control thereof.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2241–2252, 2259; Dec. Dig. ☞559.]

Action by W. Rutger J. Planten, suing for himself as stockholder and for all other stockholders of the Nassau National Bank of New York similarly situated, against the National Nassau Bank of New York and others. On demurrer to a separate defense, brought on as a contested motion. Motion granted.

Holt, Warner & Gaillard, of New York City (W. J. Gibson, William D. Gaillard, and Macdonald De Witt, all of New York City, of counsel), for plaintiff.

Duer, Strong & Whitehead, of New York City (Selden Bacon, of New York City, of counsel), for defendants Earl, Weed, Munro, and Bell.

Dennis & Buhler, of New York City, for defendant Miller.

GIEGERICH, J.  [1] In an action brought by a stockholder of a national bank against its directors for damages for alleged waste of its assets by mismanagement, the complaint alleges as an excuse for not making a demand upon the bank that it bring such suit that the defendants constitute a majority of such directors. An affirmative defense sets up that prior to the commencement of the action the bank went into voluntary liquidation, pursuant to section 5220 of the Revised Statutes of the United States (U. S. Comp. St. 1913, § 9806), and the shareholders appointed a committee "to liquidate the affairs of the bank," and further alleges that by such act the matter of realizing on the assets of the bank was thereafter kept out of the control of the board of directors, and that the directors, since the passage of such resolution, have had no power over the bringing of actions by the bank or over its assets, but that such power since that time has vested in the liquidating committee. This defense is demurred to, but as the allegation that the liquidating committee superseded the directors as the controlling authority of the bank is made expressly to depend upon the effect of such resolution, the demurrer admits only the adoption of the resolution and not the result which the pleader alleges flowed from such action. Such further allegations are plainly conclusions, and not admitted by the demurrer. Greeff v. Equitable Life Assur. Soc'y, 160 N. Y. 19, 29, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659.

[2] If it were a fact that the liquidating committee became the controlling authority, and that such committee and not the directors there-

after had the power to determine what actions should be brought by the bank, then it may be conceded that upon the familiar rule of law the plaintiff should have first demanded of the liquidating committee that the bank bring such action, and that in the absence of such an allegation in the complaint the defense pleaded is a valid one. I cannot find any warrant, however, for holding that the authority of the directors was taken away by the appointment of such a committee. The counsel for the defendants does not point to anything in the National Bank Act (Act June 3, 1864, c. 106, 13 Stat. 99) to indicate such a result, and I cannot find anything. It may be an established custom of long standing to appoint such a committee as an agency for liquidating purposes in such cases, but it does not follow that the control of the directors is terminated merely because such an agency has been created for a special purpose. The functions of such a committee are analogous to those of the officers of the bank rather than to those of the directors, and just as the authority of the officers is subordinate to the authority of the directors, so, I think, it must be held that the authority of such a committee is similarly subordinate. The law places the control of a national bank in the hands of the directors, and there it must be held to reside until it is taken away by some other provision of the law, such, for instance, as by the appointment of a receiver. Even if the stockholders should attempt in the most studied and explicit terms to take away the statutory and customary power of the directors and to vest all power in a liquidating committee, which the resolution in the present case falls far short of doing, it is doubtful whether the courts could safely recognize such an attempted substitution of control and the placing of formal authority in the hands of a body not known to the law and whose powers and functions would not be defined by any statutes or by any decisions. Such an aid to liquidation as an auxiliary agency has been found useful, and has justified itself by experience, as is evident from the fact that such a committee seems generally appointed in such cases. All the benefit of such an auxiliary agency can be secured and preserved, however, by holding that it is auxiliary and leaving the supreme power in the directors, instead of holding that such liquidating committee is supreme, and thus launching the administration of liquidating proceedings upon an uncharted sea without any precedents for guidance.

The learned counsel for the defendants, recognizing that controlling decisions have held that the bank continues its corporate existence, notwithstanding the liquidation proceedings, and that its directors continue to be directors, suggests the idea of concurrent or co-ordinate power; but such a theory is equally unworkable. If, for instance, the bank had a claim to enforce by action in such a case, and the two bodies differed, could no action at all be brought in the name of the bank, or could two actions be brought, and, if the latter, what relief, if any, could be afforded to a defendant thus harassed? Without multiplying instances of the confusion that would be introduced, either by the theory of paramount power of such a committee or by the theory of its co-ordinate power, it is enough to say that by rejecting both theories and staying on the safe and familiar ground that the directors

continue to have the power to direct, and that the liquidating committee is merely an agency subject to their control, we lose nothing of the practical value of such an instrumentality for the performance of its special purpose, and at the same time we retain the full benefit of all the rules and principles of both substantive law and practice that have been established by the legislative and judicial power relative to corporations generally and to national banking associations specifically.

No case directly in point has been cited on either side. The weight of such cases as there are, however, is in favor of the conclusion above stated. In Central Nat. Bank of Baltimore v. Connecticut Mutual Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693, it was set up as a defense to an action against the bank that the stockholders of the bank pursuant to the law had voted that the bank go into liquidation, and it was certified by the Comptroller of the Currency that the bank had gone into voluntary liquidation under said section 5220. It was claimed that such action by the stockholders and the subsequent steps in reducing its assets to cash and paying its creditors and distributing the balance among its stockholders constituted a dissolution of the corporation. The court said (104 U. S. 73, 26 L. Ed. 693):

"It is to be observed that the sections under which the proceedings took place, which, it is claimed, put an end to the corporate existence of the bank, do not refer in terms to a dissolution of the corporation and there is nothing in the language which suggests it in the technical sense in which it is used here. * * * If there are claims made which the directors of the association are not willing to acknowledge as just debts, there is nothing in the statute which is inconsistent with the right of the claimant to obtain a judicial determination of the controversy by process against the association, nor with that of the association to collect by suit debts due to it. It is clearly, we think, the intention of the law that it should continue to exist, as a person in law, capable of suing and being sued, until its affairs and business are completely settled. The proceeding prescribed by the law seems to resemble, not the technical dissolution of a corporation, without any saving as to the common-law consequences, but rather that of the dissolution of a copartnership, which, nevertheless, continues to subsist for the purpose of liquidation and winding up its business."

In this language of the court there is a direct recognition of the fact that in the process of liquidation the directors are still the ones in whom resides the authority to determine what are just debts, and the consequent authority to resist unjust claims against the bank or enforce just ones in its favor.

The expression of the views of the court in Merchants' Nat. Bank of Minneapolis v. Gaslin, 41 Minn. 552, 43 N. W. 483, is still more closely in point. There the action was on a domestic judgment recovered by the plaintiff against the defendant. The defense, among others, was that the plaintiff was dissolved prior to the bringing of the action. At the trial the defendant offered in evidence a certified copy of a resolution passed by the vote of two-thirds of the stockholders that the bank go into liquidation and be closed, and appointing trustees to close up its affairs, which was objected to and excluded. The court in passing upon this point said (41 Minn. 552, 553, 43 N. W. 483):

"The fact that the stockholders by the vote of the requisite two-thirds, resolved that the bank go into liquidation and be closed, and that notice thereof was sent to the Comptroller of the Currency, did not dissolve the corporation, and, while it probably disabled it to go on with the banking business, it did not affect its capacity to collect its assets and settle its affairs; and the appointment by the shareholders of what they call 'trustees,' to close up the affairs of the bank, the title to its assets and choses in action not being vested in them, and they being, therefore, only agents, did not affect the right of the corporation to maintain actions upon its choses in action."

The counsel for the defendants cites Fisher v. Andrews, 37 Hun, 176, Nelson v. Burrows, 9 Abb. N. C. 280, Finance Co. v. N. J. S. L. R. Co. (C. C.) 183 Fed. 830, Swope v. Villard (C. C.) 61 Fed. 417, and Cable v. Beall, 130 N. C. 533, for the proposition that after a receiver has been appointed the hostile interests of the defendant directors are no longer a sufficient excuse for the failure to allege a demand upon the receiver that the suit be brought.

[3] The theory of all those cases and similar ones is that the receiver, once one is appointed, displaces the directors in the control of the corporation. This is familiar law, and is not only expressly provided in many statutes, but is a long-established and well-recognized practice. The books are full of actions by receivers of corporations, but I doubt if a single case can be found where a liquidating committee has attempted to bring an action.

Another case of a different character cited by the defendant's counsel is Jewett v. United States, 100 Fed. 832, 41 C. C. A. 88, 53 L. R. A. 568. In that case Jewett was, as stated in the opinion (100 Fed. 834, 41 C. C. A. 90, 53 L. R. A. 568), "president of the Lake Mutual Bank of Wolfeborough, and, without formally resigning that office, he was constituted the agent of the association to close its affairs in liquidation, as provided by section 5220 of the Revised Statutes." Among other allegations in that case was one that Jewett "had authority from the association to collect all its credits," and the court observed (100 Fed. 839, 41 C. C. A. 95, 53 L. R. A. 568), that the authority given him "with reference to certain very important matters connected with closing the affairs of the association, if not to all of them, was as extensive as that which would have vested in its president and directors if no agent had been appointed." An examination of the entire opinion in that case, however, does not warrant the conclusion that the court meant to say that Jewett superseded the directors in control of the affairs of the bank and could have brought an action in the name of the bank without their authority or contrary to their direction. That action was brought to punish Jewett criminally for his misapplication of the funds of a national bank in liquidation. He was indicted under section 5209 of the Revised Statutes of the United States (U. S. Comp. St. 1913, § 9772), which covers misapplication of funds by a president, director, cashier, teller, clerk, or agent of a national bank, and he was indicted as president, director, and agent. He had been the president of the bank, and a director also, and had never resigned. As held in the decision above cited, the bank continued its corporate existence notwithstanding the liquidation proceedings and its directors continued in office. The point under consideration and discussion by the court at the time the language above quoted was used was whether Jewett

was an "agent" within the meaning of the statute under which he was indicted, and which grouped the representatives of the corporation included under the act in the following words: "President, director, cashier, teller, clerk or agent." The court said (100 Fed. 839, 41 C. C. A. 95, 53 L. R. A. 568):

"We are not permitted to hold that one occupying the position of the plaintiff in error is excluded from the classes of persons within its purview however it might be with some one exercising temporary or special authority, who would not, in the mind of the Legislature, be commonly associated with the recognized officers of the bank."

From this it is apparent that the court had no intention and no need to make any comparison of the relative rank of the authority of Jewett, the liquidating agent, and the other persons of official character mentioned in the statute. All that was necessary to hold—and, properly construed, all the decision did hold—in that case was that the duties and powers of Jewett were of such a character as to put him in a class with the officers named, which it will be observed ran down the scale of importance to clerks, rather than of such a special or temporary character as not to warrant the designation of agent. That the court could have had no intention of holding that Jewett had general authority superior to, or even equal to, that of the directors is further evident from the fact that, as stated in the opinion (100 Fed. 838, 41 C. C. A. 94, 53 L. R. A. 568), the special authority issued to Jewett came from the board of directors. It might further be observed that the court (100 Fed. at page 839, 41 C. C. A. 96, 53 L. R. A. 568), in referring to the theory that the officers of a national banking association which has gone into liquidation occupy the relation of trustees for the creditors, said:

"This applies, however, as well to the directors of an association as to its agent in liquidation. In neither the one case nor the other do the directors cease to be directors, or the agent to be agent."

This shows that the court recognized that the directors continued to be directors, notwithstanding the fact that they had conferred certain large special powers upon the agent in liquidation. The court further said (100 Fed. 838, 41 C. C. A. 94, 53 L. R. A. 568):

"It must be observed that no such office as an agent in liquidation is known to the statute, and also that the court declared against Jewett alike as president, director and agent."

It is true that the court, on the same page, also said that the appointment of an agency for liquidating purposes had been "long recognized as permitted by the law"; but such remarks applied only to Jewett's character as an agent within the provisions of section 5209 of the Revised Statutes of the United States, under which he was indicted and convicted, and therefore the effect of the resolution constituting him the agent of the bank to close its affairs in liquidation, so far as the control of the directors was concerned, was not involved in that case, and what the court said about the extent of the authority of the agent was not meant in way of comparison of such authority with that of the directors, but only to show, as above pointed out, that

the authority was at least of such an important and permanent character as to warrant classifying that agent in a group that included tellers and clerks.

My conclusion is that neither in the decision nor in the consideration of this case apart from the decisions can any ground be found for holding that the authority of the liquidating committee was superior to or even equal to that of the directors, or that such committee had power to authorize, contrary to the wishes of the directors, a suit in the name of the bank.

The plaintiff's motion is therefore granted, with $10 costs, with leave to the defendants to amend their answers within 20 days on payment of such costs.   Settle order on notice.