EMIL GREEFF, Respondent, *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

| | 160 | 19 |
|---|---|---|
| | 172 | ²144 |
| | 172 | ³144 |

1. LIFE INSURANCE — ESSENTIALS OF ACTION BY POLICYHOLDER TO RECOVER SHARE OF COMPANY'S SURPLUS. An action by a policyholder against a life insurance company, to recover a proportionate share of the company's surplus, brought without application to or approval by the attorney-general, and therefore prohibited by the Insurance Law (L. 1892, ch. 690, § 56) if regarded as an action for an accounting or as interfering

with the prosecution of the defendant's business, cannot be maintained unless the complaint states facts sufficient to entitle the plaintiff to recover in an action at law upon the policy as an instrument for the payment of money, or to recover against the defendant for a breach of its contract.

2. PROVISIONS OF CONTRACT AS TO DISTRIBUTION OF SURPLUS. Where, by the terms of a contract of life insurance, the parties have agreed that the policy shall be entitled to participate in the distribution of the company's surplus according to such principles and methods as may from time to time be adopted by the company, and the policyholder has expressly ratified and accepted the principles and methods so adopted for the distribution of surplus, the contract itself presents an obstacle to the maintenance of an action at law by the policyholder to recover a proportionate share of accumulated surplus reserved by the company, in accordance with its principles and methods of distribution, over and above the amount of surplus distributed to the policyholders.

3. DISTRIBUTION OF SURPLUS PREREQUISITE TO ACTION — DISCRETION OF DIRECTORS. Under such a contract of life insurance, until a distribution of surplus has been made by the directors of the company, a policyholder has no such title to any part of the surplus as entitles him to maintain an action at law for its recovery; and when the directors have exercised their discretion in regard to the distribution of surplus, the courts will not interfere, where there has been no bad faith, willful neglect or abuse of discretion.

4. ACCUMULATED FUND NOT SUBJECT TO DISTRIBUTION BECAUSE DENOMINATED SURPLUS INSTEAD OF RESERVE. Where there is nothing in the charter or policy of a mutual life insurance company which requires it to distribute its entire surplus among its policyholders, but it is only required to credit to each policy an equitable share of the surplus, after deducting an amount sufficient to cover all outstanding risks and obligations, having due regard, in the exercise of a proper discretion, to the safety of all its policyholders and the security of its business, an accumulated fund is not required as matter of law to be distributed among the policyholders merely because the fund has been denominated by the officers of the company as surplus, instead of a reserve fund.

5. EXERCISE OF DISCRETION IN APPORTIONMENT OF SURPLUS. Where the charter of a mutual life insurance company provides that when ascertained each policyholder shall be credited with an equitable share of the surplus, and that the earnings and receipts over and above the dividends, losses and expenses shall be accumulated, the question of how much of the surplus shall be distributed to the policyholders and how much shall be accumulated for the security of the company and its members is to be decided by the officers and managers, in the exercise of their discretion, having in view the present and future contingencies of the business; and in the absence of any allegation of wrongdoing or mistake by them, their determination must be treated as proper, and their apportionment of the surplus is *prima facie* to be regarded as equitable.

6. FAILURE OF POLICYHOLDER'S COMPLAINT TO SHOW INTEREST IN UNDIVIDED SURPLUS. An allegation in the complaint of a policyholder seeking to recover a specific portion of the accumulated surplus held by a life insurance company, that if that fund was divided as an amount in which he had an interest was previously divided, he would be entitled to receive the sum claimed, does not constitute a showing that he has any interest in the undivided fund, or that he is entitled to receive from the company the amount claimed or any other amount.

7. APPORTIONMENT OF SURPLUS A CONDITION PRECEDENT TO POLICY-HOLDER'S ACTION AT LAW. Where, under a contract of life insurance, only the proportion of the company's surplus which equitably belonged to the policy was to be credited to it and paid to the policyholder, an ascertainment and determination of that proportion is a condition precedent to the policyholder's right of recovery of any portion of the surplus in an action at law.

*Greeff* v. *Equitable Life Assur. Soc.*, 40 App. Div. 180, reversed.

(Argued June 7, 1899; decided October 3, 1899.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 5, 1899, reversing an interlocutory judgment entered upon a decision of the trial court, which sustained a demurrer to the complaint, and from an interlocutory judgment entered upon the decision of the former court overruling the defendant's demurrer.

This action was brought to recover an unpaid balance of the share of the defendant's net surplus, to which the plaintiff alleges himself to be entitled.

The question certified is as follows : " Does the complaint in this action state a cause of action ? "

The material allegations of the complaint are stated in the opinion.

*William B. Hornblower* and *Charles B. Alexander* for appellant. Where a complaint is demurred to, the demurrer admits only the facts and not the conclusions or inferences therefrom drawn by the pleader and averred in the complaint. (*B. C. Inst.* v. *Bitter*, 87 N. Y. 250 ; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 328 ; *Swan* v. *M. R. F. L. Assn.*, 20 App. Div. 257 ; *Bonnell* v. *Griswold*, 68 N. Y.

294.)  The decision of the Appellate Division is at variance with the actuarial and business principles essential to carrying on life insurance, as well as at variance with the general statutes of this state regulating the affairs of life insurance companies.  (L. 1892, ch. 690, §§ 21, 82, 84, 86.)  The defendant's surplus is held for the benefit of policyholders, present and future, and not in any sense for the benefit of the stockholders.  (L. 1868, ch. 118; L. 1872, ch. 100.)  By the terms of the plaintiff's contract with the company, as contained in his policy of insurance, plaintiff's rights, by way of dividend, are limited to the "principles and methods" from time to time adopted by the company.  (*Uhlman* v. *N. Y. L. Ins. Co.*, 109 N. Y. 421; *Chase* v. *H. Ins. Co.*, 20 N. Y. 55.)  Plaintiff cannot base any claim upon the provisions of the charter. (*Cohen* v. *N. Y. M. L. Ins. Co.*, 50 N. Y. 624; *People* v. *S. L. Ins. & An. Co.*, 78 N. Y. 124; *Bewley* v. *E. L. A. Soc.*, 61 How. Pr. 344; *M. B. L. Ins. Co.* v. *Hillyard*, 37 N. J. L. 444; *Taylor* v. *C. O. L. Ins. Co.*, 9 Daly, 489; *Hencken* v. *U. S. L. Ins. Co.*, 11 Daly, 282; *Hunton* v. *E. L. A. Soc.*, 45 Fed. Rep. 661; *Everson* v. *E. L. A. Soc.*, 68 Fed. Rep. 258; *Grobe* v. *E. C. M. Ins. Co.*, 24 Misc. Rep. 462; *Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 157.)  Even if the plaintiff had shown any case calling for a judicial examination into the basis of the apportionment made to him, this would necessarily involve an accounting, and is prohibited by statute, except in a suit by the attorney-general, or in one brought with his consent.  (L. 1892, ch. 690, § 56; *Swan* v. *M. R. F. L. Assn.*, 155 N. Y. 19; 20 App. Div. 255; *Seymour* v. *M. R. F. L. Assn.*, 14 Misc. Rep. 151; *Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 157.)  Section 56 of the Insurance Law is constitutional.  (*Swan* v. *M. R. F. L. Assn.*, 155 N. Y. 19; Cooley's Const. Lim. [6th ed.] 347; *Stocking* v. *Hunt*, 3 Den. 276; *Lennon* v. *Mayor*, etc., 55 N. Y. 361.)  As an action at law, praying for a money judgment for a sum certain, the complaint is defective, in that it does not show on its face that the amount claimed is due.  (*Fisher* v. *C. O. L. Ins. Co.*, 20 J. & S. 179.)

*Dickinson W. Richards* for respondent. The relation between a life insurance company and a policyholder is one of contract and not one of trust, and an action at law lies on the part of the policyholder against the company for breach of its contract. (*Uhlman* v. *N. Y. L. Ins. Co.*, 109 N. Y. 421; *People* v. *S. L. Ins. Co.*, 78 N. Y. 114; *Cohen* v. *N. Y. M. L. Ins. Co.*, 50 N. Y. 610; *Taylor* v. *C. O. L. Ins. Co.*, 9 Daly, 489; *Hencken* v. *U. S. L. Ins. Co.*, 11 Daly, 282; *M. B. L. Ins. Co.* v. *Hillyard*, 37 N. J. 444; *Bewley* v. *E. L. A. Soc.*, 61 How. Pr. 344; *Everson* v. *E. L. A. Soc.*, 68 Fed. Rep. 258; 71 Fed. Rep. 570; *Hunton* v. *E. L. A. Soc.*, 45 Fed. Rep. 661; *Mygatt* v. *N. Y. P. Ins. Co.*, 21 N. Y. 52; *Fuller* v. *M. L. Ins. Co.*, 70 Conn. 647.) Under the plaintiff's policy the fund, to a distributive share of which he is entitled, is the net surplus of the company. (*Matter of E. R. F. L. Ins. Assn.*, 131 N. Y. 354; *People* v. *Grand Lodge*, 156 N. Y. 533; *B. M. Ins. Co.* v. *Van Winkle*, 1 Beas. 333; *Ins. Co.* v. *Mfg. Co.*, 1 Gilm. 236; *Matter of E. & I., etc., Ins. Soc.*, 1 H. & M. 105; Morawetz on Priv. Corp. § 591; *Alexander* v. *Cauldwell*, 83 N. Y. 480; *Jemison* v. *C. S. Bank*, 122 N. Y. 140; L. 1853, ch. 463, § 3; L. 1872, ch. 100; *Bain* v. *A. L. Ins. Co.*, 11 Can. L. T. 273; *Pierce* v. *E. L. Ins. Co.*, 145 Mass. 56.) The plaintiff has not waived any of his rights against the defendant. (*Carter* v. *B. L. Ins. Co.*, 110 N. Y. 15; *Phelan* v. *N. M. L. Ins. Co.*, 113 N. Y. 147; *Baxter* v. *B. L. Ins. Co.*, 119 N. Y. 450; *Warner* v. *N. L. Ins. Co.*, 100 Mich. 157; *Hicks* v. *N. L. Ins. Co.*, 60 Fed. Rep. 692; *Griffith* v. *N. Y. L. Ins. Co.*, 36 Pac. Rep. 118; *E. L. Ins. Co.* v. *Clements*, 140 U. S. 233; *E. L. Ins. Co.* v. *Nixon*, 81 Fed. Rep. 796; *Red-strake* v. *C. Ins. Co.*, 15 Vr. 302; *Darnley* v. *L. C. & D. Co.*, L. R. [2 H. L. Cas.] 43.) Plaintiff's right to bring this action is not affected by the statute, chapter 400 of the Laws of 1890, re-enacted in section 56 of the Insurance Law of 1892 restricting in certain cases a right of action against a life insurance company to the attorney-general or a judgment creditor. (*Morse* v. *Goold*, 11 N. Y. 281; *Howell* v. *City*

*of Buffalo,* 15 N. Y. 523; *Wynehamer* v. *People,* 13 N. Y. 421; *McCracken* v. *Hayward,* 2 How. [U. S.] 608; *Sturges* v. *Crowninshield,* 4 Wheat. 122; *Ogden* v. *Saunders,* 12 Wheat. 213.) The question of plaintiff's capacity to sue cannot be raised under the demurrer that the complaint does not state facts sufficient to constitute a cause of action. (*People ex rel.* v. *Crooks,* 53 N. Y. 648; *Van Zandt* v. *Van Zandt,* 7 N. Y. Supp. 706; *Swan* v. *M. R. F. L. Assn.,* 155 N. Y. 9.) The plaintiff will not be denied the right to prosecute his action because it may involve the examination of books of account. (*Volger* v. *W. M. Ins. Co.,* 51 How. Pr. 301; *Cassidy* v. *McFarland,* 139 N. Y. 201; *Camp* v. *Ingersoll,* 86 N. Y. 433.) This case is not governed by the decisions holding that stockholders in a corporation have no right of action at law against it for a share of its profits until a dividend has been declared, nor do the cases as to income bondholders or preferred stockholders, cited by the defendant before the court below, sustain a demurrer to the complaint at bar. (*Jermain* v. *L. S. & M. S. R. Co.,* 91 N. Y. 483; *People ex rel.* v. *Peck,* 157 N. Y. 57; *People ex rel.* v. *Dederick,* 158 N. Y. 416; *Boardman* v. *L. S. & M. S. R. R. Co.,* 84 N. Y. 157; *Thomas* v. *N. Y. & G. L. R. R. Co.,* 139 N. Y. 163; *Day* v. *O. & L. C. R. R. Co.,* 107 N. Y. 129; *E. R. R. Co.* v. *Nickals,* 119 U. S. 296.) It is not a ground of demurrer if the complaint does not set out all the facts and details fixing the amount of recovery to which plaintiff is entitled. (*Rowell* v. *Janvrin,* 151 N. Y. 60; *Lorillard* v. *Clyde,* 86 N. Y. 384; *Wetmore* v. *Porter,* 92 N. Y. 76; *Parker* v. *Pullman,* 36 App. Div. 208; *Stuyvesant* v. *Mayor, etc.,* 11 Paige, 415; *Emery* v. *Pease,* 20 N. Y. 62; *P. P. Co.* v. *Seabury,* 43 Hun, 611; *Lawler* v. *Murphy,* 58 Conn. 314.) Many of the defendant's objections to the complaint, as disclosed upon the arguments below, were based mainly on allegations of facts outside of the record. If they have any force it is by way of defense or partial defense, and not by way of demurrer. (*Sage* v. *Culver,* 147 N. Y. 245; *Coatsworth* v. *L. V. R. Co.,* 156 N. Y. 457.)

MARTIN, J.   The question of the sufficiency of the plaintiff's complaint has been certified to this court by the Appellate Division and presents the only question to be determined upon this appeal.   The importance of this case requires a careful and studious consideration of that question and of the principles involved in its determination.   Its importance arises not so much from the amount at issue in this particular case, although it is large, as from the principles to be established by its decision.   The determination of the principles involved will not only affect existing contracts amounting to many million dollars, but may disturb the methods and basis upon which vast business transactions have hitherto been conducted, and create confusion and disorder in a system under which an important branch of business has been transacted for at least a half century.

The defendant was organized in 1859 under an act of the legislature providing for the incorporation of life insurance companies, passed June 24, 1853, with a capital stock of one hundred thousand dollars, upon which, under its charter, its holders might receive not to exceed seven per cent per annum, and the earnings and receipts of the company, over the dividends, losses and expenses, were to be accumulated by it.   Its corporate powers were vested in a board of directors who were authorized to select from among their number a president and vice-president, and to appoint a secretary and such other officers as they might deem requisite.   They were given power to enact by-laws, rules and regulations for the government of the officers and agents of the company and for the management of its affairs, to determine the rates of premiums, the amount to be insured upon any one life and the terms of such insurance.   The charter also provided that the insurance business of the company should be conducted on the mutual plan, and that all premiums should be payable in cash.   In case a policyholder should omit to pay any premium due from him, or should violate any other condition of the policy, the board of directors might forfeit his policy and apply all previous pay-

4

ments to the benefit of the company.  It also provided : " The officers of the company, within sixty days from the expiration of the first five years, from December 31, 1859, and within the first sixty days of every subsequent period of five years, shall cause a balance to be struck of the affairs of the company, which shall exhibit its assets and liabilities, both present and contingent, and also the net surplus, after deducting a sufficient amount to cover all outstanding risks and other obligations.   Each policyholder shall be credited with an equitable share of the said surplus.   Such equitable share, after being ascertained, shall be applied to the purchase of an additional amount of insurance (payable at death or with the policy itself), expressing the reversionary value of such equitable share, at such interest as the directors may designate, or if any policyholder so direct, such equitable share of surplus shall be applied to the purchase of an annuity, at such rate of interest as the directors shall designate, to be applied in the reduction of his or her future premiums.   In case of death, the amount standing to the credit of the party insured, at the last preceding striking of balance as aforesaid, shall be paid over to the person entitled to receive the same ; and the proportion of surplus equitably belonging to him or her, at the next subsequent striking of balance, shall also be paid, when the same shall have been ascertained and declared."

In 1868, by chapter 118 of the laws of that year, a statute was enacted which provided that any domestic insurance corporation, which, by its charter or articles of association, is restricted to making a dividend only once in two or more years, may hereafter, notwithstanding anything to the contrary in such charter or articles, make and pay over dividends annually, or at longer intervals, in the manner and proportions, and among the parties, provided for in such charter or articles.

Chapter 100 of the Laws of 1872 provided that " it shall be lawful for any life insurance company organized under the laws of this state, to ascertain at any given time, and from

time to time, the proportion of surplus accruing to each policy from the date of the last to the date of the next succeeding premium payment, and to distribute the proportion found to be equitable either in cash, in reduction of premium, or in reversionary insurance, payable with the policy, and upon the same conditions as therein expressed at the next succeeding date of such payment; anything in the charter of any such company to the contrary notwithstanding."

On the first day of July, 1882, the plaintiff entered into a written contract of insurance with the defendant whereby it, in consideration of the statements contained in the plaintiff's application and the payment of the premium mentioned therein, promised to pay to the plaintiff or his representatives on May 2, 1897, or upon his death if it occurred before then, the sum of twenty thousand dollars. Among the provisions and requirements indorsed upon and made a part of the policy, and relying upon which it was issued and received, was the following: "This policy, during its continuance, shall be entitled to participate in the distribution of the surplus of this society, by way of increase to the amount insured, according to such principles and methods as may from time to time be adopted by this society for such distribution; which principles and methods are hereby ratified and accepted by and for every person who shall have or claim any interest under this contract; but the society may at any time before a forfeiture, upon request of the person holding the absolute legal title to this policy, substitute a cash payment to be fixed by said society in lieu of the said increase to the amount insured, to be used in reduction of subsequent premiums."

All the conditions of the policy were kept and performed by the plaintiff on his part. The defendant annually, within sixty days from the thirty-first day of December in each year, from 1882 to 1896, both inclusive, caused a balance to be struck of the affairs of the society, exhibiting its assets and liabilities, both present and contingent, and also the net surplus after deducting a sufficient amount to cover all outstanding risks and other obligations. Such net surplus ascertained

and declared by the defendant in each of the several years was for the year 1882, $8,078,495, and in each subsequent year a larger amount, until 1896, when the amount was $43,277,179. During the years mentioned the defendant distributed to the plaintiff in reversionary insurance, payable with the policy and on the conditions therein expressed, as the plaintiff's proportion of surplus accruing from the date of the last to the date of the next succeeding payment, amounts varying from $243 to $328, making a total of $3,932.

The several divisions of surplus distributed to the plaintiff were from sums received in excess of the several amounts mentioned as the balance of the surplus for each year, so that each distribution of surplus has been from profits accruing during the year without diminishing the surplus on hand at the end of the preceding year, and the plaintiff has received no portion of the net surplus of $43,277,179 ascertained and declared by the defendant as the amount on hand December 31, 1896.

According to the principles and methods adopted by the defendant for distribution of surplus there was distributed to the plaintiff in the year 1895 $328, as his proportion of a distribution of surplus amounting to $2,002,954.23, and the proportion due the plaintiff of the $43,277,179, net surplus ascertained on December 31, 1896, according to the same principles and methods, which were the principles and methods in force during the life of the plaintiff's policy, is $7,087.38, in addition to the amount of surplus actually awarded of $3,932, making a total of $11,019.38 of surplus, and twenty thousand dollars of principal.

On June 23, 1897, the defendant paid to the plaintiff the sum of $23,932 and certain interest thereon, and an agreement was then and there made between them that such payment should not prejudice the right of the plaintiff to claim that he is entitled, under his policy, to a further and greater sum by way of surplus or profits, and there still remains due from the defendant to the plaintiff, under and by virtue of said policy, the aforesaid sum of $7,087.38 and interest thereon

from the second day of May, 1897, no part of which has been paid, although payment thereof was duly demanded prior to the commencement of this action.

The foregoing are all the material averments of the complaint, and include the provisions of the policy, the charter and the various statutes so far as they apply to the policy in suit or are referred to in the complaint.

This examination discloses that after alleging the incorporation of the defendant, the provisions of its charter, the statutes relating to the subject, the issuing of the policy, its provisions, the plaintiff's performance of all its conditions, and after eliminating the conclusions and inferences of the pleader, there remain in the complaint the allegations as to the surplus for each year from 1882 to 1896, the amount which was distributed to the plaintiff during those years from profits other than were included in such surplus, the distribution to the plaintiff in 1895 of $328 as his proportion of a surplus of $2,002,954.23, and that his proportion of the $43,277,179 surplus in 1896 would be $7,087.38 if it was distributed in the same manner.

The defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. By interposing this demurrer, it admitted all the facts alleged and such inferences as could be fairly drawn from them. (*Moss* v. *Cohen*, 158 N. Y. 240 ; *Coatsworth* v. *Lehigh Valley R. Co.*, 156 N. Y. 451 ; *Sanders* v. *Soutter*, 126 N. Y. 193 ; *Marie* v. *Garrison*, 83 N. Y. 14 ; *Flynn* v. *Brooklyn City R. R. Co.*, 158 N. Y. 493, 503 ; *Sage* v. *Culver*, 147 N. Y. 241, 245 ; *Kley* v. *Healy*, 127 N. Y. 555.) But it admitted none of the conclusions averred, nor any construction put upon the contract by the pleader. Nor did it admit the correctness of any inference drawn by the pleader from the facts alleged. The contract having been set forth, the rights of the parties must be determined by the terms of that instrument, so far as they are dependent upon it. (*Buffalo Catholic Institute* v. *Bitter*, 87 N. Y. 250 ; *Bogardus* v. *N. Y. Life Ins. Co.*, 101 N. Y. 328.)

At the threshold of this examination, it is proper to observe that, under the provisions of section 56 of the Insurance Law (Laws 1892, ch. 690), the plaintiff cannot maintain an action or proceeding for an accounting or enjoining, restraining or interfering with the prosecution of the business of the defendant or for the appointment of a receiver, except upon the application or approval of the attorney-general. That statute declares: " No order, judgment or decree providing for an accounting or enjoining, restraining or interfering with the prosecution of the business of any domestic insurance corporation or appointing a temporary or permanent receiver thereof shall be made or granted otherwise than upon the application of the attorney-general, on his own motion or after his approval of a request in writing therefor of the superintendent of insurance, except in an action by a judgment creditor or in proceedings supplementary to execution." This act was doubtless passed to firmly establish and effectuate the decision of this court in *Uhlman* v. *N. Y. Life Ins. Co.* (109 N. Y. 421). In *Swan* v. *Mutual Reserve Fund Life Assn.* (155 N. Y. 9) we held that the action was for an accounting; that it would result in an interference with the prosecution of the business of the corporation, and was within the prohibition of the foregoing statute. It was also held that a policyholder had no legal capacity to maintain such an action since the adoption of that statute; that it must be brought, if at all, by the attorney-general, and that the statute did not violate any constitutional rights of a policyholder or member. Therefore, if this action is to be regarded as an action for an accounting or as interfering with the prosecution of the defendant's business, it is prohibited by statute, as there is no allegation, claim or pretense of any application or approval by the attorney-general.

In considering whether the complaint states facts sufficient to constitute a cause of action, the point to be determined is whether the facts stated are sufficient to entitle the plaintiff to recover in an action at law upon the policy as an instrument for the payment of money, or to recover against the

defendant for a breach of its contract. This renders neces-
sary a somewhat critical examination of the provisions of the
policy relating to the defendant's surplus and the manner of
its distribution.

The contract provides that the plaintiff's policy, during its
continuance, shall be entitled to participate in the distribution
of the surplus of the society according to such principles and
methods as may from time to time be adopted by it for such
distribution, and these principles and methods were expressly
accepted and ratified by the plaintiff for himself or any other
person having an interest in the policy. Thus, by the terms
of the plaintiff's contract, he expressly ratified and accepted
the principles and methods which were from time to time
adopted by the defendant for the distribution of such surplus.

The plaintiff's claim, that the whole surplus should be dis-
tributed, cannot be sustained if it is in conflict with the pro-
visions of the contract between the parties, without making a
new contract for them, which the court will not do. There-
fore, this question depends for its solution upon a proper
interpretation of the provisions of the policy. The parties
agreed that the plaintiff should participate in the distribution
of the surplus according to the methods and principles
adopted by the company. It is to be observed that the
agreement was that the plaintiff should participate, not in the
whole surplus, but in the distribution of the surplus, or, in
other words, in the surplus which, according to the defend-
ant's methods and principles, was to be distributed. We
find nothing in the record to sustain the suggestion of the
learned Appellate Division to the effect that the minds of the
parties did not meet as to that provision in the contract. It
was clearly a part of it, which was presumptively understood
and deliberately entered into by them. Surely there is noth-
ing in the complaint to indicate that any of the provisions of
the policy was not fully understood by the plaintiff and
intended to be an effective part of it.

The principles and methods by which the defendant dis-
tributed its surplus are set forth in the complaint. It dis-

closes that the defendant has never divided among its policy-holders its entire surplus, but has uniformly since 1882 retained a portion thereof in its own hands. The purpose for which it was retained does not appear. It may have been to insure the defendant's continued solvency and thereby to more fully protect the holders of its policies, or because the fund so retained was dedicated to other classes of insurance, or to its annuity fund. Presumptively it was for some proper and lawful purpose.

It is manifest that by the terms of the plaintiff's policy the only right he acquired was to share in an equitable distribution of the accumulated surplus. Until a distribution was made by the officers or managers of the defendant, the plaintiff had no such title to any part of the surplus as would enable him to maintain an action at law for its recovery. We think the principles which control the disposition of the surplus earnings of a stock corporation are applicable here. In those cases it has often been held that until dividends have been declared a stockholder has no right of action at law to recover any part of the fund applicable to that purpose, and that when directors have exercised their discretion in regard thereto the courts will not interfere unless there is bad faith, or willful neglect, or abuse of such discretion. (Cook on Stock and Stockholders, § 542, note 5, §§ 272, 542, 545; *Williams* v. *W. U. T. Co.*, 93 N. Y. 162; *McNab* v. *McNab & Harlin Mfg. Co.*, 62 Hun, 18; *Park* v. *Grant Locomotive Works*, 40 N. J. Eq. 114; *Boardman* v. *Lake Shore & Mich. S. Ry. Co.*, 84 N. Y. 157; *Thomas* v. *N. Y. & G. L. Ry. Co.*, 139 N. Y. 163; *Day* v. *O. & L. C. R. R. Co.*, 107 N. Y. 129; *Fuller* v. *Met. Life Ins. Co.*, 70 Conn. 647.) Those principles were recognized by GOODRICH, P. J., in his dissenting opinion in this case. He says: " In general, only the directors of any corporation have the power to decide what amount or share of its earnings is to be applied in dividends, and I can see no different principle which limits the authority of the directors of this society to decide what part of the net surplus is to be distributed to the

policyholders at any particular period." As there is in the complaint in this case no allegation of bad faith, willful neglect or abuse of discretion by the defendant or its officers, it seems clear that under the principle of these authorities this action cannot be maintained.

The learned Appellate Division, while it admitted that the defendant had a large discretion in determining the amount of its surplus, and that it might increase its reserve fund for the security of its policyholders and to cover any contingent liabilities that might arise, taking such steps and adopting such principles and methods as were demanded by a wise and prudent management to insure the prompt payment of losses and to successfully carry on and extend its business, still held that as the fund remaining in the defendant's hands had been denominated by it as surplus, instead of a reserve fund, all the usual powers and authority of its directors and managers to determine how and when it should be distributed, and all their discretion as to the manner of its disposition, were spent, and, hence, they were required, as matter of law, to distribute the entire amount among its policyholders. We are not disposed to agree with that conclusion. We think this case should not be decided upon any such narrow or technical ground. It should be determined upon a fair interpretation of the intent and purpose of the provisions of the policy, and not by giving to a single word an undue, unusual or exaggerated effect. In a sense, all the funds in the possession of a mutual insurance company, over and above its immediate and present liabilities, may be regarded as surplus, yet it is not for that reason understood as belonging to, or to be immediately distributed among, the policyholders, either by them or by the company. If the same exaggerated meaning were to be given to the word "liabilities" when applied to demands against the company, as was given to the word "surplus," it would include the full face amount of all its outstanding risks or policies, and no surplus would ever exist. The word "surplus," like the word "liabilities," has acquired a special meaning in this branch of the insurance business.

Under the provisions of this policy it is plain that the surplus and the distributable surplus are regarded as two distinct and separate funds. The liabilities of a life insurance company are calculated upon rules based upon experience, which are dependent upon various contingencies. As applied in that class of insurance, the liabilities of a company do not represent the full amount of outstanding policies. So the word "surplus" is used to designate the amount of funds in the hands of the company after deducting its liabilities as ascertained by certain rules adopted by the insurance department for determining the value of each risk. Obviously, the word "surplus" was not used in the defendant's charter or policy to designate the amount of money in the company's hands which was to be distributed among its policyholders, but to represent the amount which should remain after certain calculated liabilities were deducted. When that amount was ascertained, it became the duty of the officers of the defendant to determine the portion of such surplus which should be distributed and the portion which should be retained for the benefit and security of the company and its members. We find nothing in the policy which requires the defendant to distribute its entire surplus among its policyholders. It is only required to credit to each policy an equitable share of the surplus, after deducting an amount sufficient to cover all outstanding risks and obligations. Under that provision the defendant had the right to retain out of its surplus an amount sufficient to insure the security of its policyholders, in the future as well as at present, and to cover any contingencies that might arise or be fairly anticipated. Obviously, it could not have been the intent of this provision to require the defendant to distribute its entire surplus, so that any depreciation in its investments or increase of its liabilities by some unusual condition, or any change of the rate of interest in calculating its reserve, would, of necessity, render it insolvent. The policyholder is to be credited only with an equitable share of such surplus, which must, we think, be regarded such a share as might with due regard to the safety of all its

policyholders, the security of its business, and in the exercise of a proper discretion, be thus credited. The adoption of principles or methods for the distribution of its surplus by which it was all distributed each year would not only place in jeopardy the security of every existing policy, but its tendency would be to prevent any increase of its business by obtaining new policies, and thus diminish its future receipts. It was essential to the prosperity of the defendant, and, consequently, to the security of its policyholders, that its business in the future should be increased, or at least maintained, as upon its maintenance its continued solvency and ability to pay future losses principally depended. No prudent person would be inclined to take a policy in a company which had so improvidently conducted its affairs that it only retained a fund barely sufficient to pay its present liabilities, and, therefore, was in a condition where any change by the reduction of interest upon, or depreciation in, the value of its securities, or any increase of mortality, would render it insolvent and subject to be placed in the hands of a receiver. The evident purpose of the provisions of the defendant's charter and policy relating to this subject was to vest in the directors of the corporation a discretion to determine the proportion of its surplus which should be divided each year. Assuming then that a discretion as to the amount of the surplus which should be distributed rested in the officers of the defendant, it cannot be said that the plaintiff is entitled, as matter of law, to recover the amount claimed in his complaint.

While the complaint alleges that the defendant declared its surplus to be more than forty-three million dollars, there is no allegation as to the amount of its outstanding policies or the proportion which the surplus bears to the amount of its existing insurance. Nor does it show that the surplus is in any way disproportionate or unnecessary to the proper security of the amount of such outstanding insurance. If, as was stated upon the argument, the amount is one thousand million dollars, the surplus would be only about four and three-tenths per

cent of the amount of its contingent liabilities. Therefore there is nothing in the complaint to show that the surplus is more than should be retained by a prudent management for the security and benefit of its policyholders.

It is said that the charter provides for a distribution of the entire surplus when ascertained. We find no such provision in it. What it does provide is that when ascertained each policyholder shall be credited with an equitable share of the surplus, to be determined and applied in the manner stated and that the earnings and receipts over and above the dividends, losses and expenses shall be accumulated. Hence, if we assume that the charter and not the contract is to control (which we by no means hold), then the question at once arises who is to determine what an equitable distribution of the surplus is. Or, in other words, the question is who is to determine how much of the surplus shall be distributed to the policyholders and how much shall be accumulated and retained for the security of the society and its members. Manifestly, that question is to be decided by the officers and managers of the defendant, who are to exercise their discretion in determining it, having in view the present and future contingencies of the business. In the absence of any allegation of wrongdoing or mistake by them, their determination of the question must be treated as proper and their apportionment of the surplus is *prima facie* to be regarded as equitable. (*Uhlman* v. *N. Y. Life Ins. Co.*, 109 N. Y. 421.)

There is no allegation that the amount of the fund held by the defendant is greater than is required by a prudent management to meet the possible and probable emergencies of its business, nor that the plaintiff has been inequitably treated as between himself and the defendant's other policyholders. Whether the discretion exercised by the defendant's officers was or was not equitable, could not be determined by the court unless an accounting by the defendant was had, and after a full investigation and ascertainment of the exact situation and condition of its affairs. Confessedly, that was not the purpose of this action.

Moreover, when the plaintiff obtained his policy, he knew, or, at least, could have easily ascertained, what principles and methods the defendant adopted in the distribution of its surplus, and that they were the same as were employed by all the successful mutual insurance companies doing business in this state. Presumptively, the plaintiff knew that the defendant had an undistributed surplus amounting to more than eight million dollars at the time his policy was issued, and that it was an added security thereto. That fact may very well have been an inducement to him to take a policy in the defendant's company. Thus, it is quite evident, not only that the plaintiff knew that the society accumulated a portion of its surplus each year, but that, independently of the provisions of the policy, he understood and consented to the principles and methods adopted and carried out by the defendant in its distribution.

Furthermore, the facts alleged fail to show that the plaintiff was entitled to any portion of the undistributed fund. The substance of his allegations as to that fund and its distribution is that by the defendant's distribution of a portion of its surplus in 1895, his proportion of $2,002,954.23 was $328, and that if the fund of $43,277,179 was distributed in the same manner, $7,087.38 would be placed to the credit of his policy. He, however, fails to allege any facts which show that any surplus which was not credited to his policy was available for or could properly or equitably be thus employed. The remaining fund may have equitably belonged to other policyholders who held a different kind of policy and who belonged to a separate class to which it was properly dedicated. This fund may have been, and doubtless was, necessary to the proper security of the various holders of the defendant's policies and to the proper and successful transaction of its business. The plaintiff avers no facts which disclose that under the provisions of his policy he acquired any interest in that portion of the surplus which represented the accumulation of a part of the defendant's earnings for forty years and which remained after it paid the plaintiff the por-

tion which its officers had from time to time determined as equitably belonging to him. Before the plaintiff was entitled to recover he was required to show that under his contract he had some legal title to or interest in the fund in the defendant's possession. His allegation is that if that fund was divided as an amount in which he had an interest was previously divided, he would be entitled to receive the sum mentioned in the complaint. That allegation in no way shows that he had any interest in that fund, or that he was entitled to receive from the defendant the amount claimed or any other amount. The requirements of a valid complaint are that it shall contain a plain and concise statement of the facts which constitute a cause of action. That requirement has not been fulfilled in this case. As we have already seen, the plaintiff has failed to state sufficient facts to disclose that he has any right or interest in the fund of which he seeks to recover a part.

The contract between the parties, the defendant's charter and the statute of 1872 are all to the effect that the distribution of its surplus by the defendant was to be based upon principles of equity and controlled by the discretion of the defendant's officers. Under the policy it was only the proportion of the surplus which equitably belonged to it that was to be credited to it and paid to the plaintiff. Therefore, before any amount of the surplus was available as a credit upon the plaintiff's policy, the proportion which equitably belonged to him, or should be credited to his policy, must be ascertained and determined. Until that was done no action at law to recover any portion of it could be maintained. Such an ascertainment and determination was a condition precedent to the right of recovery. It may be that if the defendant had failed or refused to ascertain and distribute the proportion of the surplus which equitably belonged to the plaintiff he could compel it to act and determine the amount. Still, until that was done no action at law for its recovery could be maintained.

These considerations render it manifest that upon the facts alleged in his complaint the plaintiff is not entitled to recover.

Eliminating from it the conclusions, inferences and construction of the pleader, and considering only the averments of fact, it fails to show any right in the plaintiff to maintain this action. No facts are alleged which show that the plaintiff, under his policy, had any actual interest in the fund of which he seeks to recover a part. By its terms he possessed no legal right to any part of the defendant's surplus, except in that portion which its officers determined to distribute among the holders of its policies, and an action at law could not be maintained until that determination was made.

It follows that the order and interlocutory judgment of the Appellate Division reversing the interlocutory judgment entered upon a decision of the Special Term should be reversed, that the interlocutory judgment of the Special Term should be affirmed, with costs to the appellant in all the courts, and that the question certified to this court should be answered in the negative.

All concur, except VANN, J., not voting.

Judgment accordingly.