that the expectation of the contract between plaintiff and defendant was realized was erroneous, and their verdict must be set aside. I am also inclined to the belief that if, after the close of the evidence at the trial, when the defendant's version had been heard, the counsel for defendant had moved for a dismissal of the complaint, or a direction for a verdict in defendant's favor, the court should have ruled that the evidence was insufficient to establish the defendant's liability. As the defendant's counsel now asks the court to set aside the verdict as against the weight of evidence, and the court is of the opinion that such a motion should be granted, it is perhaps fair to impose as a condition the payment of a trial fee and the trial disbursements. It is so ordered. Ordered accordingly.

---

(30 Misc. Rep. 523.)

### HACKETT v. EQUITABLE LIFE ASSUR. SOC.[1]

(Supreme Court, Special Term, New York County. February, 1900.)

1. INSURANCE—ACTION ON POLICY—FRAUDULENT REPRESENTATIONS.
Plaintiff, for whose benefit a certain life was insured, cannot take advantage. in an action on the policy, of false representations which had been made to the insured by defendant in respect to a prior canceled policy issued to the insured in a transaction to which she was an entire stranger.

2. FRAUD—ACTIONABLE REPRESENTATIONS.
Representations which were promissory in character, and related merely to what should be in the future, are not actionable, though shown to have failed of verification.

3. PLEADING—SUFFICIENCY OF COMPLAINT.
In determining the sufficiency of a complaint. such inferences as can be fairly drawn from the facts stated therein must be allowed in support thereof, excluding all mere conclusions of law and allegations of immaterial and irrelevant matter.

4. INSURANCE—ACTION ON TONTINE POLICY—ACCOUNTING.
Where a complaint, in an action at law on a tontine policy, alleges that plaintiff's share of the accumulated reserve of the policy, and the share of the surplus which should be apportioned thereto, were certain sums. the admission of the allegation by demurrer, and the fact that defendant was under an express obligation to make an equitable distribution of the surplus at the expiration of the dividend period which had passed, but refused to do so, preclude the latter from asserting that the amounts due plaintiff could be ascertained only by an accounting in equity.

5. ACTION AT LAW—NECESSITY OF ACCOUNTING.
The fact that an accounting may be necessary in an action at law will not prevent its maintenance, the jurisdiction of equity in matters of account arising on the grounds of the complicated character of the accounts, the need of a discovery, and the existence of a judiciary or trust relator.

6. PLEADING—JUDGMENT ON DEMURRER.
Where there is one cause of action consisting of two items, plaintiff, if entitled to recover anything. should have judgment on a demurrer going to the entire cause of action.

7. INSURANCE—ACTION ON TONTINE POLICY—ACCOUNTING IN EQUITY.
In an action at law on a tontine policy to recover plaintiff's share of the surplus which she was entitled to have apportioned, defendant's claim that there were other persons similarly situated with plaintiff, respecting the surplus or profits, so that an accounting in equity was necessary, is not sustained by allegations in the complaint that defendant had issued

---

[1] Affirmed on appeal, see 63 N. Y. Supp. 1092.

to other persons a large number of policies of insurance, amounting to many millions of dollars, on the semitontine or tontine savings plan, or other plans or schemes of insurance, when taken in connection with an allegation immediately preceding, that defendant claims the right to retain a large portion of its assets to which plaintiff is entitled on account of certain other policies issued by defendants, not of the same class as plaintiff's policy, and not entitled to share ratably with her.

**8. SAME.**

Laws 1892, c. 690, being designed to provide for the case of one seeking by an extensive accounting or injunction to interfere with the prosecution of the business of an insurance company, does not apply to an action on a tontine policy to recover the holder's share of the accumulated reserve and surplus, in which no accounting is sought or needed.

Action by Mary Hackett against the Equitable Life Assurance Society to recover damages for the breach of a contract contained in a policy of life insurance. Judgment for plaintiff on a demurrer to the complaint.

C. N. Morgan, for plaintiff.

Alexander & Green (William B. Hornblower, of counsel), for defendant.

GILDERSLEEVE, J. The complaint is padded with a mass of irrelevant and redundant matter, which may be disposed of briefly by saying that the alleged representations of the defendant's agent have no relation to the plaintiff's cause of action whatever. They were made prior to the date of the policy issued by the defendant to Thomas Hackett, and nearly 10 years before the date of the policy in suit. The first policy was surrendered and canceled when the present policy was issued, and it is safe to say that, whatever cause of action those representations gave, Thomas Hackett did not survive the surrender of his policy to the defendant and its cancellation; nor, since she was an entire stranger to the transactions between Thomas Hackett and the defendant regarding the first policy, can the plaintiff take any advantage of them. Besides, the representations in question were promissory only in character. They related, not to what had been, but to what should be in the future, and were not actionable, even though shown to have failed of verification. Moreover, they are not even alleged to have been false in fact, much less so to the knowledge of the agent or of the defendant, nor to have been fraudulently made, nor to have misled Thomas Hackett to his injury. The history of the plaintiff's cause of action begins August 3, 1893, when the policy in suit was issued to her by the defendant. This cause of action might have been amply stated in 10 folios of the complaint, whereas the pleader expatiates through 40. I must confine myself to a consideration of the few well-pleaded facts stated in the complaint relating exclusively to the policy issued to the plaintiff. The action is, in form, one at law for the recovery of damages for the breach of the contract contained in the policy. The complaint avers, in substance, the making of a policy insuring the life of Thomas Hackett in $10,000 on the "semitontine plan," for the benefit of the plaintiff; the payment of an annual premium of $571; the completion of the divi-

dend period on December 9, 1898, when the policy was to be paid; the performance of the stipulations on the part of the plaintiff. It also avers that, by the terms of the policy, no dividend should be allowed or paid unless Thomas Hackett should survive the completion of the tontine period, and the policy should then be in force; that all surplus or profits derived from policies issued by defendant on the tontine plan should and would be apportioned equitably by the defendant among the holders of such policies as should complete their tontine period; and that, on the completion of that period, the policy then being in force, plaintiff might, at her election, withdraw, in cash, her policy's entire share of defendant's assets, i. e. the accumulated reserve of the policy and the surplus apportioned by defendant to plaintiff's policy. The complaint further avers that the policy was not determined by the death of Thomas Hackett before the expiration of the dividend period or otherwise; that in July, 1899, the plaintiff notified the defendant of her election to withdraw her policy's entire share of the accumulated reserve thereon and her equitable share of the surplus; that said share of the accumulated reserve amounted to $6,296.36, which the defendant actually then held for her account, and that her equitable share of the surplus was at least $6,603.70. It is further averred that the defendant refused to pay the plaintiff her said equitable share of the assets, claiming that it was $9,960.60 only, and stating that this was all it would pay. and that the defendant has refused to apportion and pay to the plaintiff her share of its assets, and has paid no part of the moneys due her under the terms of the policy, by which she has suffered damages in $13,000.

The question presented is whether these facts constitute a cause of action at law. The defendant insists that the plaintiff's remedy is not at law, but by suit in equity for an accounting, without which, and the presence of a large number of other persons holding policies of the same class as the plaintiff's, and having a like interest in the fund in which the plaintiff seeks to share, her rights cannot be completely determined. The defendant also claims that, an accounting being necessary, the provisions of section 56, c. 690, Laws 1892, prohibit such an action except by the attorney general. In determining the sufficiency of the complaint, such inferences as can be fairly drawn from the facts stated in the complaint must be allowed in support of the complaint, excluding, of course, all mere conclusions of law and all allegations of immaterial and irrelevant matter. Greeff v. Society, 160 N. Y. 19, 54 N. E. 712.

The position taken by the defendant requires the determination of two principal questions, viz.: First, whether the amount due to the plaintiff has been already sufficiently ascertained; and, secondly, whether, in the nature of the case, it is ascertainable except by a formal accounting between the plaintiff and the defendant and all other persons who have a like interest in the surplus here in question. Obviously, if the plaintiff's share in the surplus is capable of ascertainment without an accounting, and has actually been ascertained, there can be no need of an accounting, and the case is not within the act of 1892. The complaint states distinctly

that the plaintiff's share of the accumulated reserve is $6,296.36, and her share of the surplus $6,603.70, and the demurrer admits the fact. In view of this admission, and of the fact that the defendant was under an express obligation to make an equitable distribution of the surplus at the expiration of the dividend period, December 29, 1898, but refused to do so, the defendant can hardly be heard to say that the amounts due to the plaintiff can be ascertained in but one way, and that by an accounting.

How the plaintiff ascertained these amounts it is not now material to inquire. It is enough that they have been definitely ascertained, and so stand admitted on this record. Upon this state of facts the plaintiff has a complete cause of action at law, in which no accounting can be necessary. The argument that an action at law cannot be maintained where the necessity for an accounting will arise is without support in the authorities; they are quite the other way. They put the equity jurisdiction in matters of account upon three grounds, viz.: "The complicated character of the accounts, the need of a discovery, and the existence of a fiduciary or trust relation. The necessity for a resort to equity for the first two reasons is now very slight, if it can be said to exist at all." Finch, J., in Marvin v. Brooks, 94 N. Y. 71–80; Smith v. Bodine, 74 N. Y. 30; Uhlman v. Insurance Co., 109 N. Y. 421–423, 17 N. E. 363; 1 Story, Eq. Jur. § 459.

The main stress of the argument of defendant's counsel is laid on that clause of the policy which provides that the surplus or profits derived from policies issued by the defendant on the tontine plan should and would be apportioned, equitably, by the defendant among the holders of such policies, etc., and it is urged that, until this apportionment is made, no cause of action has accrued to the plaintiff. But, assuming this to be so, that clause does not apply to the accumulated reserve; and if the plaintiff's right to the latter has accrued, as, upon the facts, I think it has, she is certainly entitled to recover her share of it. There is but one cause of action, though it consists of two items, and, as the demurrer goes to the entire cause of action, if the plaintiff is entitled to recover anything she should have judgment on the demurrer. Substantially, this view was taken by the court in Gadd v. Society (C. C.) 97 Fed. 834, although it was there held, contrary to the practice in this court, that the defendant might pay into court that part of the plaintiff's claim which was considered as ascertainable by an accounting only. The only ground on which the defendant claims that there are other persons similarly situated with the plaintiff respecting the surplus or profits is that the complaint alleges that since the issuance and delivery of the policy to the plaintiff the defendant has issued and delivered to other persons a large number of policies of insurance, aggregating in amount many millions of dollars, upon the semi-tontine plan or tontine savings fund plan of assurance, or other plans or schemes. This allegation is wholly immaterial; but, whether so or not, it is impossible to say, as matter of law, that it imports anything more than that a large number of policies of several different kinds, and on various plans or schemes, have been is-

sued by the defendant since the plaintiff's policy was issued. The statement is made disjunctively, and whether the number includes any or many of the semitontine plan, to which class plaintiff's policy belongs, cannot be determined from this allegation. Taking it, however, in connection with the allegation which immediately precedes it, viz. that the defendant claims the right to retain a large portion of its assets, to which plaintiff is entitled, for and on account of certain other policies issued by defendant, not of the same class as plaintiff's policy and not entitled to share ratably with her, both allegations relating to the same subject, and therefore entitled to be read together, the effect is to lessen this uncertainty to the disadvantage of the defendant. So that the argument for the necessity for an accounting based on the allegations of the complaint rests on grounds too slender and too uncertain to prevail.

Great reliance is placed by the defendant on the case of Greeff v. Society, 160 N. Y. 19, 54 N. E. 712. But that case is plainly distinguishable from this. There the plaintiff's policy entitled him to participate in the distribution of the defendant's surplus "according to such principles and methods as may, from time to time, be adopted by this society for such distribution." Greeff sued, at law, to recover $7,087.38, alleged to be due him as his proportion of the net surplus of the society. The complaint stated that, at different times between 1882 and 1896, the plaintiff had received as his proportion of the defendant's surplus sums varying from $240 to $328, but had received nothing for the year 1896, when the society's surplus was $43,277,179; and the complaint went on to charge, in substance, that, according to the principles and methods adopted by the defendant for distribution of surplus, there was distributed to the plaintiff, in the year 1895, $328 as his proportion of a distribution of surplus of $2,002,954.23, and that, according to the same principles and methods, the plaintiff's proportion of the net surplus of $43,277,179, ascertained December 31, 1896, was $7,087.38. This allegation was argumentative in form and specious in effect. In a word, the statement is practically this: For several years, between 1882 and 1895, the plaintiff had received from the society, as his proportion of the net surplus, amounts varying from $243 to $328 yearly, and these sums had been ascertained, apparently, in accordance with certain principles and methods. He concluded, therefore, that, according to the same principles and methods, he was entitled to $7,087.38 for the year 1896. This was a palpable non sequitur. The fallacy lay in the erroneous assumption that the same principles and methods which governed the distribution of surplus between 1882 and 1896 would be observed by the society in making a distribution in 1896. This will be made apparent by a reference to the policy in that case. By the terms of his policy, Greeff had agreed that his right to share in the society's surplus should be regulated and determined "by such principles and methods as might, from time to time, be adopted by the society for its distribution"; thus committing the whole subject to the judgment and discretion of the society, including the time of distribution, which might be yearly or otherwise, the amount to be dis-

tributed, and the proportion to be allotted to each participant. All these might be varied from time to time, at the will of the society, so that the principles and methods which regulated one distribution would furnish no criterion for any future distribution. As the court said in that case, the rule applicable to the defendant, respecting distribution of surplus, was analogous to that which applies to the directors of stock corporations regarding the declaration and payment of stock dividends; that, except for some form of malfeasance, the court will not interfere to compel their action; and that, until the corporation acts and declares a dividend, the stockholder has no cause of action whatever. The inevitable conclusion was that, the defendant having made no distribution for 1896, Greeff had no cause of action. And it was there further held that he was not entitled to participate in the whole surplus, but in such a distribution of it, partial or entire, as the society should decide to make. The case at bar differs essentially from the Greeff Case. First, the defendant here stipulated that, at a definite time, viz. December 29, 1898, the expiration of the dividend period, it would pay the plaintiff her share of the accumulated reserve, and would then apportion equitably, among the holders of such policies as should complete their "tontine dividend period," all surplus or profits derived from such policies issued by defendant on the "tontine plan," i. e. the entire fund. In the Greeff Case it was only such a part of the fund there in question as the society should determine to distribute. Here the distribution and payment were to be made at a fixed date; there the time of distribution was uncertain and dependent on the will of the society. Here the distribution was to be made absolutely and on principles of equity which are referable to an unalterable standard; there the distribution was to be made in accordance with such "principles and methods" as the society, in its judgment and discretion, should adopt, and which, except for gross error or inequity, no court would review or set aside. There the amount due plaintiff was not ascertained nor issuably alleged; here it is.

It remains only to consider Act 1892, c. 690. It would seem to be sufficient to observe that this act was apparently designed to provide for the case of a party seeking, by an extensive accounting or an injunction, to interfere with the prosecution of the business of an insurance company. The manifest scope of the act is too narrow to include a case like this, in which no accounting is sought or needed. Judgment for the plaintiff on the demurrer, with leave to the defendant to withdraw the demurrer and answer on payment of costs.

Judgment accordingly.