In the Matter of the Application and Petition of DIVISION 132 OF THE AMALGAMATED ASSOCIATION OF STREET AND ELECTRIC RAILWAY EMPLOYEES OF AMERICA, and DIVISION 148 OF THE AMALGAMATED ASSOCIATION OF STREET AND ELECTRIC RAILWAY EMPLOYEES OF AMERICA, Respondents, for an Order Directing the UNITED TRACTION COMPANY to Proceed to Arbitration, in Accordance with the Terms of a Certain Contract, Pursuant to Chapter 275 of the Laws of the State of New York, 1920.

UNITED TRACTION COMPANY, Appellant.

Third Department, May 17, 1921.

Arbitration — action to compel arbitration under contract between street railway and labor unions — contract made part of pleadings prevails over allegations — agreement of employer to treat with officers of union on grievances not agreement to arbitrate — agreement to increase wages for part of year and continue increase on condition employer allowed to increase fares — increased fares not allowed — payment of increased wages after refusal of increase in fares did not continue agreement as to wages — protest by union against reduction in wages — strike by employees constitutes anticipatory breach of contract — agreement providing for arbitration during last month of contract as to future wages — Arbitration Law not applicable.

In proceedings by labor unions to compel a street railway company to proceed to arbitrate, pursuant to the provisions of chapter 275 of the Laws of 1920, known as the Arbitration Law, certain alleged controversies

over wages in accordance with the terms of a certain contract, set forth as an exhibit and made part of the petition, the controversy is to be determined upon the language of the contract itself, without reference to the allegations of the pleadings.

A provision in a contract between labor unions and a street railway company in reference to the wages and working conditions of the employees, by which the company agreed " through its properly accredited officers to treat with the properly accredited officers and committee of the Association on all grievances that may arise," is not an agreement to arbitrate said grievances.

In this proceeding it appeared that the petitioners entered into a working agreement with their employers, the street railway company, July 1, 1920, regulating the conditions under which the employees of the company were to perform their work, their priorities, their wages, etc.; that said agreement was to continue until June 30, 1921; that subsequently and on July 30, 1920, a supplemental agreement was made whereby the wages of the employees fixed in the original contract were to continue till June 30, 1921, provided the railway company received permission to charge increased fares on or before November 1, 1920; that the original agreement contained a provision whereby the parties agreed that " if at or within thirty days prior to the expiration of this agreement, any controversy shall arise between the Traction Company and their employees as to the rate of wages to be paid to such employees after the expiration of this agreement, the same shall be referred for determination to arbitrators;" that said company did not receive permission to increase its fares on or before November 1, 1920, and in January, 1921, notified its employees that it would put into effect the former scale of wages, whereupon said employees, members of said labor union, struck and left the employ of the company.

*Held*, that the fact that the company took no action to reduce the compensation of its employees till January, 1921, did not operate to continue the rate of wages provided by the contract beyond November 1, 1920, the time definitely fixed by the terms of the contract for the termination of the agreement as to wages if increased fares were not allowed, and the fact that the labor unions protested against the action of the company in reducing the wages did not operate to change the contract in any manner.

The agreement of the labor unions was that their members should " perform their labor," and that the agreement should remain in force till June 30, 1921, and, therefore, when, in January, 1921, said employees, members of said labor unions, left their employment they committed an anticipatory breach of the contract, and if there had been a valid agreement for an arbitration of all controversies they would have relieved the traction company of the obligation to perform.

Moreover, the arbitration clause in said agreement was not general in its scope, but was limited to the arbitration of any controversy arising within thirty days before the expiration of the contract concerning the

rate of wages to be paid to employees after the expiration of the contract, and there was no provision in the contract to settle by arbitration a controversy arising between the parties, except during the month of June, 1921, which time had not arrived when the controversy in question arose, and so the provisions of section 3 of the Arbitration Law, which was designed to compel the specific performance of contracts for arbitration, does not apply and the courts have no authority to compel arbitration of a controversy which has not been provided for in the contract.

Accordingly, the labor unions cannot compel arbitration since they have committed an anticipatory breach of the provision therefor by abandoning the contract and thereby destroying its consideration before it had an opportunity to come into operation, and they have no ground for complaint because their members are no longer employees of the company and because the time fixed by the contract for the operation of the arbitration clause has not yet arrived.

APPEAL by the United Traction Company from an order of the Supreme Court, made at the Rensselaer Special Term and entered in the office of the clerk of the county of Rensselaer on the 2d day of April, 1921, directing the trial of certain issues by jury and directing that such trial take place at a Trial Term of the Supreme Court, appointed to be held within and for the county of Rensselaer on the 4th day of April, 1921, and that such trial proceed at said Trial Term at two-thirty o'clock in the afternoon of said 4th day of April, 1921.

*John E. MacLean* [*John T. Norton* of counsel], for the appellant.

*John F. Murray* and *William H. Murray* [*William H. Murray* of counsel], for the respondents.

WOODWARD, J.:

The petitioners, Joseph F. McLoughlin and Joseph S. Droogan, as presidents of local divisions of the Amalgamated Association of Street and Electric Railway Employees of America, unincorporated associations having in excess of seven members, have petitioned the court for an order directing the United Traction Company to proceed to arbitrate certain alleged controversies over wages to be paid to the employees of the traction company " in accordance with the terms of the written contract," set forth as an exhibit and made a part of the petition, pursuant to the supposed provisions of chapter

275 of the Laws of 1920, known as the Arbitration Law (Consol. Laws, chap. 72). This petition has been granted and an order issued directing the trial of certain issues of fact by a jury, under the provisions of the statute relied upon. The United Traction Company appeals from this order.

The rule is thoroughly established that where the contract is made a part of the pleadings the controversy is to be determined upon the language of the contract itself, without reference to the allegations of the pleadings, in so far as the matter is within the scope of the contract. (*Greeff* v. *Equitable Life Assurance Society*, 160 N. Y. 19, 29, and authorities there cited.) Coming then to the consideration of the contract between the petitioners and the United Traction Company, and assuming for the purposes of this discussion that the petitioners have a standing in court as the representatives of the members of their respective unincorporated associations as though the latter were incorporated, which is obviously as far as any assumptions may fairly go in the premises, we find that on the 1st day of July, 1920, the petitioners and the United Traction Company entered into an agreement, by the terms of which the traction company agreed " through its properly accredited officers to treat with the properly accredited officers and committee of the Association on all grievances that may arise," which is clearly not an agreement to arbitrate. The remainder of the contract deals generally with the details of the conditions under which the employees of the company are to perform their work, their priorities, their wages, etc., having no bearing upon this controversy; and section 34 provides that " in consideration of the above, the Association agrees that its members shall perform their labor and use their influence and best endeavors to promote and advance to a successful end the welfare and prosperity of the company." Section 35 provides that " this agreement shall remain in force from July 1st, 1920, to June 30th, 1921." This agreement appears to have been supplemented on the 30th day of July, 1920, by a provision as to the wages to be paid from July 1, 1920, to November 1, 1920, " with the understanding that said rates of wages are to continue until June 30th, 1921, provided the Company is

granted permission to charge increased fares on or before November first, 1920." This latter agreement was obviously a part of the contract of July 1, 1920, and established the rate of wages up to the 1st of November, 1920, and, in the event mentioned, to the 30th of June, 1921. There is no allegation in the petition, nor is it claimed, that the traction company was given permission to increase its rate of fare on or before November 1, 1920, so far as this record discloses, so that the contract in respect to the wages to be paid covers only the period from July 1, 1920, to November of that year, and the fact that the traction company took no action to reduce the compensation until January of 1921 did not operate to continue the rate of wages agreement beyond the time definitely fixed by the terms of the contract. When, therefore, the traction company, on the 22d day of January, 1921, gave notice that on the twenty-eighth day of the same month it would put into effect the former scale of wages it was acting under the contract. The fact that the petitioners protested against this action does not operate to change the contract in any manner. The contract was, by its terms, to continue in effect until the 30th of June, 1921, and the contract as to the rate of wages was limited to the 1st of November, 1920, unless the traction company should, on or before that date, be permitted to increase the rate of fare to be charged passengers. But the agreement of the petitioners was that the members of their associations should " perform their labor," and that " this agreement shall remain in force from July 1st, 1920, to June 30th, 1921." When, on the 28th day of January, 1921, the employees of the traction company, members of the petitioners' unincorporated associations, left their employment, leaving the traction company incapable of immediate performance of its obligations to the public, they committed a breach of the contract, and if there had been a valid agreement for an arbitration of all controversies they would have relieved the traction company of the obligation to perform.

The agreement for arbitration, contained in the 36th section of the agreement made a part of the petition, was designed to provide for a continuance of the service of the employees during the entire period embraced in the contract. It did

not undertake to deal with the members of the associations, except as they continued in the employment of the traction company. The moment they refused to perform the services which the petitioners had agreed should be rendered for a definite period, and severed their relations as employees, the provision for arbitration came to an end; there were no controversies existing between the traction company and its employees, and there was no agreement to arbitrate any other controversy. It is one thing to agree to arbitrate controversies while the relation of employer and employee continues, and quite another to attempt to compel an adjustment of a personal quarrel. The traction company in agreeing to arbitrate a question of wages under particular circumstances, with its employees discharging their obligations to the corporation, and enabling the corporation to discharge its obligations to the public, is in the nature of a mutual concession. The contract says, in effect, that no matter what the disagreement is in respect to wages the affairs of the corporation shall not be disturbed; it will be permitted to go on with its operations and in return for this the corporation agrees to accept the determination of an arbitration. The consideration for this agreement is lacking the moment the employees abandon their work, and the corporation is no longer bound to accept a determination of arbitrators.

So far we have proceeded upon the theory that the arbitration clause was general in its scope. But that is not the fact. The provision for arbitration is limited. It provides that " it is further mutually agreed that if at or within thirty days prior to the expiration of this agreement, any controversy shall arise between the Traction Company and their employees as to the rate of wages to be paid to such employees after the expiration of this agreement, the same shall be referred for determination to arbitrators," etc. This agreement related wholly to an adjustment of wages for a period succeeding the term of the contract; it provided a period of thirty days before the termination of the agreement in which the parties could arrange for a new term, the traction company agreeing to submit any controversy arising during that period in respect to wages to a board of arbitration, and in consideration of that agreement the petitioners undertook that the members

of their associations would " perform their labor " and remain in the employ of the traction company until the 30th day of June, 1921. This condition has not been fulfilled; the employees quit work on the night of the 28th of January, 1921, and have not occupied the relation of employees since that time, and the period provided for in the contract has not yet arrived. There was no provision in the contract that the traction company would arbitrate any dispute over wages arising in January, 1921. It had agreed definitely upon a scale of wages up to the 1st day of November, 1920, with a proviso that if it were permitted to increase its rates on or before that date it would continue the wages until the thirtieth day of the following June, but this increase was not granted on or before November 1, 1920, and the obligation to pay the rates agreed upon terminated on the 1st day of November, 1920. No provision had been made for this contingency, and the traction company, under its general authority to conduct its business, had a right to offer what wages it could afford to pay between the 28th day of January, 1921, and the termination of the contract on the thirtieth day of June. The election on the part of the employees to abandon their employment in disregard of the contract made in their behalf by the petitioners could not impose an obligation which was not provided in the contract.

There was no provision in the written contract to settle by arbitration a controversy arising between the parties to the contract, except during the month of June, 1921, and the provisions of section 3 of the Arbitration Law can, therefore, have no control over this controversy. This act is intended to compel a specific performance of contracts for arbitration, not to create new contracts, or to impose conditions which the parties themselves have not agreed upon. The power given is to petition the Supreme Court or a judge thereof for an order directing that such arbitration proceed " in the manner provided for in such contract " (Arbitration Law, § 3), not to proceed generally with an arbitration of a controversy which has not been provided for in the contract. The statute has, no doubt, a legitimate field of operation, but it is not in the present instance. The former employees, represented by the petitioners, have abandoned the contract; they have

committed an anticipatory breach of the provision for arbitration by destroying its consideration before it had an opportunity to come into operation, and they have no ground for complaint, because they are no longer employees, and because the time fixed by the contract for its operation in any event has not yet arrived.

The order appealed from should be reversed and the petition dismissed.

All concur.

Order reversed and proceeding dismissed, without costs.