GEORGE M. COLE, Respondent, v. W. MAYNARD LEVY, JR., and Others, Appellants, Impleaded with PLATTSBURGH GAS AND ELECTRIC COMPANY, Defendant.

Third Department, March 4, 1925.

Corporations — agreement between stockholders for stock control — action for accounting as to stock purchased and to compel assignment of one-half thereof upon payment of purchase price and for injunction — agreement for stock control and management of business does not survive death of either party — transfer of stock by one of parties to son was not subject to trust in plaintiff's favor — purchase of stock by son for himself, though he were agent of father, did not impose liability on father or estate — transfer of stock by father to son did not make son party to agreement or subject him to obligations thereof — complaint does not state cause of action.

An agreement entered into between the plaintiff and another stockholder, whose estate is a party to this action, whereby the parties agreed to maintain stock

control of a corporation and to share equally in stock purchased by either of the parties to the agreement, which stipulates that the purpose of the agreement relating to the division of subsequently acquired stock was to prevent either party obtaining an advantage over the other, is personal to the contracting parties, capable of performance only by them and does not survive the death of either.

Furthermore, it cannot be implied that the parties intended to place the stock held by them, or subsequently acquired, in trust for the benefit of each other, to the end that the agreement might be fulfilled, and there is no provision in the agreement prohibiting either party from selling his stock.

An allegation in the complaint in an action for an accounting as to stock purchased and to compel the assignment thereof on payment of one-half of the purchase price, that the transfer by the testator to his son of a part of the stock was in trust for the testator and his estate, and that the transfer was made so that the son could act for the testator in carrying out the agreement and in the event of the testator's death to act for the estate in the same way, has no legal significance or effect so far as the estate of the testator is concerned, for neither party could, by his separate act, extend the nature and duration of the contract for the benefit of his estate, since the written contract did not survive the death of either party; furthermore, said allegation was a mere conclusion by the pleader.

The complaint did not state a cause of action against the testator or his estate, since there is no allegation that the testator violated the agreement, or that the son, acting as the agent of the testator, purchased the new stock as agent, but, on the contrary, the complaint assumes that the son acted for himself individually.

The son, in purchasing the stock, though he did so while acting as agent of the testator, was acting entirely outside of his agency, and such act did not constitute a violation of the agreement between the plaintiff and the testator, for it was neither authorized by the testator nor ratified by him directly or indirectly.

A cause of action was not stated in the complaint against the son, since there is no allegation that he was a party to the agreement, and the mere fact that a part of the stock was transferred to him by the testator did not make him subject to the terms of the agreement, and the allegation in the complaint, that by virtue of the transfer he became a party to the agreement, was a mere legal conclusion, and not an allegation, that he actually, by mutual agreement, subjected himself to the obligations imposed under the agreement.

APPEAL by the defendants, W. Maynard Levy, Jr., and another, from an order of the Supreme Court, made at the Saratoga (Ballston Spa) Special Term, held at Trial Term pursuant to stipulation, and entered in the office of the clerk of the county of Clinton on the 26th day of December, 1924, denying their motion for judgment dismissing the amended complaint which was made after answer on the ground that the complaint does not state facts sufficient to constitute a cause of action and that the alleged contract on which the plaintiff's action is based is unenforcible under the Statute of Frauds. (See Civ. Prac. Act, § 476; Rules Civ. Prac. rules 106, 107, 112.)

Appeal by the defendants, Frances W. Levy and others, as executors, etc., of William M. Levy, deceased, from an order of the

Supreme Court, made at the Saratoga (Ballston Spa) Special Term, held at Trial Term pursuant to stipulation, and entered in the office of the clerk of the county of Clinton on the 26th day of December, 1924, denying the motion of William M. Levy, now deceased, made under rule 106 of the Rules of Civil Practice, to dismiss the amended complaint on the ground that it does not state facts sufficient to constitute a cause of action as against said defendant.

Appeal by all the defendants, W. Maynard Levy, Jr., and others, from an order of the Supreme Court, made at the Warren (Glens Falls Chambers) Special Term and entered in the office of the clerk of the county of Clinton on the 26th day of December, 1924, amending and continuing the temporary injunction obtained by the plaintiff *ex parte.*

The second above-mentioned motion was made in the lifetime of William M. Levy by Frank E. Smith, the person designated by the court to represent his interests, due to alleged incompetency of the former. Pending the determination of the first two motions, William M. Levy died and his executors were substituted in his place and stead. The third order appealed from is an order of the Special Term held by the same justice granting to the plaintiff an injunction *pendente lite* restraining the defendants W. Maynard Levy, Jr., and Chester C. Kaufman, individually, from selling or otherwise exercising acts of ownership over certain shares of stock of the defendant Plattsburgh Gas and Electric Company and from voting or attempting to vote the same at any stockholders' meeting of said company, held during the pendency of the action. The injunction order also restrained the defendant company from permitting any transfer of the said shares of stock on the books of the company.

The amended complaint alleges that the stock of the defendant company consists of 1,000 shares of preferred and 1,250 shares of common stock, both having the same voting privileges; that the plaintiff is a stockholder, director, president and general manager of the defendant company and was such stockholder, director and manager from its organization in 1909 and its president and manager since 1914; that William M. Levy became a stockholder prior to 1914 and a director and vice-president in 1914; that W. Maynard Levy, Jr., the son of William M. Levy, became a stockholder in May, 1916, and a director in January, 1917; that Chester C. Kaufman became a stockholder in May, 1924; that in December, 1913, and January, 1914, the defendant company required financial assistance and the plaintiff sought out the said William M. Levy and conferred with him respecting the situation of the said company.

The complaint then alleges (paragraph 8) that during said

December, 1913, and January, 1914, " plaintiff and the defendant William M. Levy entered into an agreement upon and for a good and valuable consideration paid and agreed to be paid by each to the other, by the terms of which it was agreed that the defendant William M. Levy would loan to the said company, either directly or by obtaining moneys for the company on the credit of the said defendant William M. Levy, such sum or sums of money from time to time as the said company required for the foregoing and the proper transaction of its business; it was further agreed that plaintiff and the defendant William M. Levy would act in accord in the management and control of said company, and would vote or use the voting power of the stock owned by them, or acquired by either as hereinafter set forth, and of any proxy from any stockholder conferring upon plaintiff or the defendant William M. Levy the right to exercise any voting power of stock by proxy in accordance with said agreement; it was further agreed that plaintiff would continue to act as president and also as general manager of said company, which offices in said company he then held, and continue to devote all of his time, energy and effort to the business of said company, giving to said company the benefit of the wide experience which he had, and his knowledge of its business and affairs, upon which from the beginning the stockholders of the said company had relied for the management, upbuilding, extension and control thereof. It was further agreed that plaintiff and the defendant William M. Levy would, from time to time, as opportunity therefor presented, purchase and acquire further stock of the company in addition to the amount then owned by plaintiff and the said defendant William M. Levy in said corporation, if such stock could be acquired for a fair price satisfactory to the purchaser; that such purchase should be upon their joint account, and upon the purchase or acquisition of such additional stock either by plaintiff or said defendant William M. Levy the purchaser thereof would immediately, upon demand and upon being paid one-half of the purchase price thereof, transfer one-half of the said stock so purchased to the other of the parties to such agreement; it was further agreed that such purchase and division of such additional stock should be made in order that neither of the parties to such agreement could obtain any advantage of control of the company over the other, but that the respective relative holdings of stock between the parties should always remain the same as at the time such agreement was entered into by them."

The complaint further alleges that the said William M. Levy became ill in the early part of the year 1924 and by reason thereof was unable to continue his active interest or to attend the meetings

of the directors and that in the month of April, 1924, the said William M. Levy transferred to his son, W. Maynard Levy, Jr., all of his stock in the company, except ten shares. It is alleged, in paragraph " X " of the amended complaint, " that such assignment and transfer was not for value, nor a sale of such stock to the said defendant W. Maynard Levy, Jr., but was in trust for the defendant William M. Levy and his estate, and such action was taken in order that the said defendant W. Maynard Levy, Jr., could and would act for the said defendant William M. Levy in his behalf, during his illness, in carrying out said agreement and in the affairs of the company, and in the event of his death the said defendant W. Maynard Levy, Jr., could and would act for his estate in carrying out the said agreement and otherwise as a stockholder of record in the transaction of the business of the company, without delay, hindrance, or interruption; that at the same time the said defendant William M. Levy constituted and appointed the said defendant W. Maynard Levy, Jr., the agent of the said defendant William M. Levy with respect to his stock in the said company and with respect to said agreement hereinbefore stated between the defendant William M. Levy and the plaintiff. That at the time of the transfer of stock from the defendant William M. Levy to the defendant W. Maynard Levy, Jr., and for a long period of time prior thereto, the said defendant W. Maynard Levy, Jr., knew of the agreement between plaintiff and the defendant William M. Levy hereinbefore set forth, and recognized and acted upon and in pursuance of the same; that the said defendant W. Maynard Levy, Jr., was then a stockholder in said company, owning one hundred (100) shares of stock therein, which said stock was transferred to him as a gift by his said father, the defendant William M. Levy, on or about May 3, 1916; that by virtue of said transfer, and for a good and valuable consideration the defendant W. Maynard Levy, Jr., thereupon became a party to said agreement, and ratified, adopted and confirmed the terms thereof, and agreed to observe and carry out the terms thereof; and did thereupon and thereafter observe and carry out the terms thereof and the purpose for which the said stock was transferred to him by voting his stock in accordance therewith in order to carry out and perpetuate the same; that at no time prior to his refusal to transfer stock to plaintiff on demand as hereinafter set forth, did the said defendant W. Maynard Levy, Jr., repudiate, rescind, or refuse to carry out in any particular the terms of said agreement."

It is then alleged: " XI. That in the month of April, 1924, plaintiff and the defendant W. Maynard Levy, Jr., had a conversation and conference with respect to the conduct of the affairs of

the company; that the said defendant informed plaintiff of the facts with respect to the assignment and transfer to him of his father's stock in the company, as set forth in the foregoing paragraph hereof; that the said defendant assured the plaintiff that he, the said defendant, would continue to act with plaintiff for and in the same manner as his said father had done, and agreed to do, under the terms of the agreement hereinbefore stated."

It is further alleged, upon information and belief, that the defendant Kaufman " knew of the agreement herein set forth " and that at the request of the younger Levy and for the latter's account and benefit, said Kaufman purchased sixty shares of said company in May, 1924.

The complaint then refers to a conference had between the plaintiff and defendant W. Maynard Levy, Jr., on or about July 5, 1924, at which time said Levy informed the plaintiff that William M. Levy " was practically incompetent for the transaction of any business whatsoever," and further informed the plaintiff that he " was concerned about the large investment of his father in loans to the said company and his said father's liability for credit extended to the said company; " that he informed the plaintiff that he believed the board of directors of the defendant company should be reorganized and suggested the addition of the defendant Kaufman; that he wished to have the indebtedness of the said company to his father paid or reduced, and expressed anxiety with respect to the security of his father's moneys invested in the company. The complaint then alleges that the plaintiff informed said defendant that he wished to have time to consider the matter. It is alleged that thereafter the plaintiff secured money sufficient to liquidate the indebtedness of the defendant company to the elder Levy and that on or about July 16, 1924, the plaintiff so notified the son and at the same time offered to purchase all the stock in the defendant company held by the Levy family.

The complaint then alleges that the younger Levy stated that he did not wish to act at once upon such offer; and " upon information and belief " that immediately after these conversations the said defendants W. Maynard Levy, Jr., and Chester C. Kaufman purchased 575 shares of the preferred stock of the said company; that the said defendants Levy, Jr., and Kaufman conspired together to purchase control of the defendant company and to remove the plaintiff from its management and have refused to assign and transfer to the plaintiff, in accordance with his demand, one-half of the amount of stock so purchased, in pursuance of said agreement between plaintiff and the defendants William M. Levy and W. Maynard Levy, Jr.; that the said defendants Levy, Jr., and Kaufman " claim to be the absolute owners of such stock."

The complaint then alleges " that defendant William M. Levy is now, and for some time past has been, incompetent, and unable to manage or control his affairs or to conduct his business, and mentally incapable of comprehending the same or his acts in connection therewith," and that plaintiff is now and since prior to the commencement of this action has been unable to confer with said defendant William M. Levy.

The relief demanded in the complaint is for an accounting as to stock purchased; for a judgment directing the assignment to plaintiff of one-half thereof upon payment of the purchase price; for an injunction restraining the defendants Levy, Jr., and Kaufman from transferring the stock or voting thereon and restraining the defendant company from making or recording any transfer during the pendency of the action.

Other facts, not deemed important, are set forth in the amended complaint and in affidavits and in the answers of the defendants W. Maynard Levy, Jr., and Chester C. Kaufman, which answers deny the existence of any such agreement as is alleged to have been made between the plaintiff and William M. Levy in December, 1913, or January, 1914, and deny that they ever knew or heard of its existence until the commencement of this action; and allege that the stock purchased by them was purchased for their own account, with their own funds, in good faith and without knowledge or notice from the plaintiff or otherwise of the existence of the alleged agreement.

*Thomas B. Cotter,* for the appellants W. Maynard Levy, Jr., individually, and W. Maynard Levy, Jr., and others, as executors, etc., of William M. Levy, deceased.

*Benjamin F. Feinberg,* for the appellant Chester C. Kaufman.

*Wallace E. Pierce* [*Thomas F. Conway, Joseph A. Kellogg* and *Thomas E. O'Brien* of counsel], for the respondent.

HINMAN, J.:

It is necessary to consider only the motions to dismiss the amended complaint on the ground that it does not set forth a cause of action, since we have concluded that these motions should have been granted upon that ground, and, therefore, that the injunction order should have fallen with the complaint. On a motion for judgment dismissing the complaint upon the ground of failure to state a cause of action, the defect must appear on the face of the complaint and there is no authority for the use of affidavits. (*Emanuel* v. *Walter,* 138 App. Div. 818; *Reade* v. *Halpin,* 193 id. 566.) On such a motion the facts alleged in the complaint and such inferences as can be fairly drawn from them

are deemed admitted; but there is no admission of the truth of any conclusions either of law or of fact. (*Frank* v. *Mandel*, 76 App. Div. 413; *Burdick* v. *Chesebrough*, 94 id. 532; *Greeff* v. *Equitable Life Assurance Society*, 160 N. Y. 19, 29; *Velsor* v. *Freeman*, 118 Misc. 276.) In *Greeff* v. *Equitable Life Assurance Society* (*supra*, 29) it is said: " But it admitted none of the conclusions averred, nor any construction put upon the contract by the pleader. Nor did it admit the correctness of any inference drawn by the pleader from the facts alleged."

The root of the cause of action sought to be pleaded is the contract alleged to have been made between the plaintiff and William M. Levy in December, 1913, or January, 1914. We think that this contract, according to the facts stated and the inferences fairly to be drawn therefrom, was of such a nature as to be personal to the contracting parties and capable of performance only by them. It would not survive either of them and was personal to that extent at least. It contemplated by its express terms a joint control of the corporation by the parties to the contract, the plaintiff to continue to be the president and general manager of the company and to continue to devote all of his time, energy and effort thereto for the benefit of the company. Neither of the parties was to obtain any personal advantage over the other in the purchase of stock. These agreements could be performed only by the parties. Upon the death of the plaintiff his services, which he alleges are valuable to the company, would cease. On the death of either party the stock owned by such party would change hands; and there is nothing in the agreement or in its nature which would impose the obligations of the contract upon the successors of the parties. On the contrary, the death of either party would defeat the purposes of the agreement. Also, there is nothing in the agreement which would prevent either party from selling his stock to one or more third persons. The agreement relates only to purchases of new stock to prevent undue advantage of such party over the other. The stock itself, owned and later purchased by them, was not put in trust to carry out the agreement nor in any way rendered non-transferable. To read into the agreement as alleged a provision that neither party should transfer his stock unless subject to such a trust would, in effect, make a new contract for the parties. Taking the agreement as it is alleged and the situation of the parties when the contract was entered into, as outlined in the complaint, such a stipulation was not necessarily implied.

What, then, is the effect to be given to the allegations of paragraph " X " of the complaint as to the transfer of stock from the

elder Levy to his son? Paragraph " X " states " that such assignment and transfer was not for value, nor a sale of such stock to the said defendant W. Maynard Levy, Jr., but was in trust for the defendant William M. Levy and his estate, and such action was taken in order that the said defendant W. Maynard Levy, Jr., could and would act for the said defendant William M. Levy in his behalf, during his illness, in carrying out said agreement and in the affairs of the company, and in the event of his death the said defendant W. Maynard Levy, Jr., could and would act for his estate in carrying out the said agreement." In so far as this alleged trust purported to relate to the estate of William M. Levy, it meant nothing. Neither party could, by his separate act, extend the nature and duration of the contract for the benefit of his estate. The original contract did not survive the death of either party to it. · The stock of the elder Levy was not subject to any trust, express or implied, in plaintiff's favor, unless to prevent the said Levy from using it personally or through his authorized agent to gain an undue advantage for himself over the plaintiff in the control of the company. In the contract between Levy and the plaintiff there were no limitations on the transfer of this stock imposed in plaintiff's favor. Moreover, a trust for a person and " his estate " is too indefinite, so far as the " estate " is concerned, to be enforced. For whom would the stock be held; for the executors, administrators or next of kin? How long would the trust continue; until the settlement of the estate or during the lives of the next of kin, or forever?

We may assume, however, that the transfer to the younger Levy by his father was a transfer for convenience in the course of an agency and that up to the time of the death of the father, if not sooner ended by the father's incompetency, the son was acting as agent for his father. The complaint states in paragraph " X " that in making such transfer of stock " in trust for the defendant William M. Levy and his estate, * * * *such action was taken in order that* the said defendant W. Maynard Levy, Jr., could and would act for the said defendant William M. Levy in his behalf, during his illness, in carrying out said agreement and in the affairs of the company, and in the event of his death the said defendant W. Maynard Levy, Jr., could and would act for his estate in carrying out the said agreement," etc. This seems to be merely the allegation of a conclusion by the pleader that this was the purpose and effect of the transfer, rather than the allegation of a fact. Then follows, however, a direct allegation of fact " that at the same time the said defendant William M. Levy constituted and appointed the said defendant W. Maynard Levy, Jr., the

agent of the said defendant William M. Levy with respect to his stock in the said company and with respect to said agreement hereinbefore stated between the defendant William M. Levy and the plaintiff."

Let us first consider whether a cause of action has been alleged against William M. Levy or his estate. There is no charge in the complaint that William M. Levy, one of the parties to the contract, violated it. It is even alleged that he was incompetent. The younger Levy, acting as agent for his father, held his father's stock. There is no allegation that the younger Levy purchased the new stock as agent for his father. The complaint assumes that the younger Levy and the defendant Kaufman acted for themselves or for the younger Levy individually and expressly alleges that they claim to be the absolute owners of such stock. It is not alleged that the elder Levy either authorized or ratified the act of his son. If there is any liability at all on the part of the former or his estate, it rests upon an act of the son done individually while he was agent for his father. The situation thus narrows down to a case of the violation of a contract between a principal and another, by an agent of the former acting for himself outside of his agency. The elder Levy not having authorized the act of his son and not having made it his own act by ratification or by seeking to derive personal advantage from it, it was not his act. In such a situation how could the contract between the plaintiff and the defendant William M. Levy be deemed violated any more than if there had been no agency and the son, on his own responsibility and without the knowledge of his father, had purchased the stock for himself? The only possible theory upon which the defendant William M. Levy might be involved is upon the principle that where an agent deals for himself and to his own advantage, in connection with the business of his agency and against the interests of his principal, the principal may require him to account. But if the principal does not choose to do so, how can a third party compel him so to do? There is no privity between them. There is not involved here a case where, if one of two innocent parties must suffer for the wrong of a third, the one who made the situation possible must bear the loss because there was no wrong done by such third party as agent or as ostensible agent, the principal not having authorized or ratified the act of his agent and not having sought to derive any benefit from the transaction within the contemplation of the contract. We think that there is no cause of action stated against the defendant William M. Levy or the representatives of his estate.

The remaining question is whether or not it has been sufficiently

alleged in the amended complaint that the defendant W. Maynard Levy, Jr., became a party to the agreement and thus liable for his personal breach of it, or in conjunction and conspiracy with the defendant Kaufman. It is alleged in paragraph " X " of the amended complaint: " That at the time of the transfer of stock from the defendant William M. Levy to the defendant W. Maynard Levy, Jr. [as agent], and for a long period of time prior thereto, the said defendant W. Maynard Levy, Jr., knew of the agreement between plaintiff and the defendant William M. Levy hereinbefore set forth, and recognized and acted upon and in pursuance of the same; that the said defendant W. Maynard Levy, Jr., was then a stockholder in said company, owning one hundred (100) shares of stock therein, which said stock was transferred to him as a gift by his said father, the defendant William M. Levy, on or about May 3, 1916; *that by virtue of said transfer, and for a good and valuable consideration the defendant W. Maynard Levy, Jr., thereupon became a party to said agreement,* and ratified, adopted and confirmed the terms thereof, and agreed to observe and carry out the terms thereof; and did thereupon and thereafter observe and carry out the terms thereof and the purpose for which the said stock was transferred to him by voting his stock in accordance therewith in order to carry out and perpetuate the same." By virtue of said transfer of 100 shares of stock from his father in 1916, W. Maynard Levy, Jr., did not thereby become a party to the agreement, because he received them as a gift and they became his. There were no conditions which attached to the stock itself. As the contract between the plaintiff and the elder Levy did not impose any limitation upon the transfer of his stock by the elder Levy, the stock, when transferred, was not subject to any conditions of the agreement, nor could third persons be made parties to the contract nor compelled to observe the contract obligations by merely becoming transferees of the stock, knowing of the agreement and acting in pursuance of it by voting their stock in accordance therewith. So far as William M. Levy and the plaintiff were concerned the contract was binding. So far as such third persons were concerned, whether friends, strangers or relatives of William M. Levy, it was not binding. The allegation above set forth, " *that by virtue of said transfer, and for a good and valuable consideration the defendant W. Maynard Levy, Jr., thereupon became a party to said agreement,*" etc., is the statement of a mere conclusion of law. It would even appear that this allegation is so made to avoid an allegation of fact that there was an actual agreement for a mutually valuable consideration between the three parties or between the plaintiff and the defendant W. Maynard

Levy, Jr.   How could the latter become a party to the agreement without changing it?   What was he to do?   Was he to divide any stock purchased by him between the three parties or only with the plaintiff?   How could he become a party without agreement to that effect with the plaintiff?   There is no allegation that for a valuable consideration he made any agreement with the plaintiff to become a party.   But apart from these considerations, the said allegations as to his becoming a party to the agreement are the mere statement of a conclusion.   We think that the amended complaint fails to state facts sufficient to show that the defendant W. Maynard Levy, Jr., became individually a party to the contract and, therefore, does not state a cause of action against him for a breach of it.   It follows that no cause of action is alleged against him and the defendant Kaufman for acts in conspiracy to breach the contract, since the contract was not shown to have any binding effect upon them individually, or either of them.   It further follows that since the complaint is insufficient as to any party, there can be no temporary injunction.

The three orders appealed from should be reversed and the complaint dismissed, with costs of each appeal.

All concur; H. T. KELLOGG, J., not sitting.

Order reversed on the law, with ten dollars costs and disbursements, and complaint dismissed as to defendants Frances W. Levy and others, as executors of the estate of William M. Levy, deceased, with costs.